## GARBANATI *v.* BECKWITH & CO.

DEFAULT—Where a party has been duly served with a summons he cannot complain that a judgment by default has been rendered against him, if he does not appear and defend at the proper time.

ERROR to the District Court of Uinta County.

The defendants in error on the 27th day of February 1878, commenced an action against the plaintiff in error and one A. H. Davis, by filing a petition and causing summons to be issued, which was served upon each of the defendants personally, on the 27th day of February 1878, requiring them to answer on the 30th day of March, 1878. On the 1st day of July, 1878, the plaintiff in error filed a demurrer to the jurisdiction of the court. On the same day a default was taken, and on the 5th of July judgment was rendered (on exhibition of proofs) in favor of the defendant in error. The case was brought up on writ of error for review of the record, on the following assignment of errors:

1st. That the action and proceedings were had in the county of Uinta, as of the second judicial district and before the judge of said district instead of, as of the third district and before the judge thereof as provided by law.

2d. That the return of the officer on the summons is defective and fails to show that service was had in said cause on this defendant in the court below.

3d. That the court erred in disregarding the demurrer of this defendant, filed in said cause.

4th. That the court erred in entering default against this plaintiff.

5th. That the court erred in rendering judgment against this plaintiff and for the defendant in error.

The defendant in error moved to affirm the judgment of the court below on the ground that the record failed to present any question for review.

*H. Garbanati*, for plaintiff in error.

*W. W. Corlett*, for defendant in error.

SENER, C. J. The court is of opinion that there is no error in this case for it to review, reverse or modify, so far as the record shows.

From an inspection of the transcript of the record it appears that the defendants in the court below, the district court held in and for the county of Uinta, H. Garbanati and A. H. Davis were served with process on the 27th day of February, 1878, the petition to begin the action being filed that day in the clerk's office of said court at the county seat of Uinta county, and process being served on said defendants in that county as the return therein shows. The defendants should have answered or demurred by the 30th of March, 1878, which was the third Saturday after the return day of the summons: this they both neglected and failed to do.

Afterwards a demurrer was filed July 1st, 1878, by one of the defendants, H. Garbanati, the other defendant not appearing.

The record does not show affirmatively that it was filed by leave of the court; if such affirmatively shown leave were necessary, of which it is not necessary for the court

here to consider, nor is it, in our view, necessary in this case to consider the right of the court, under the statutes regulating the practice as to demurrers, to grant such leave at that time, nor the presumption or lack of presumption that such leave was given.

On the same day, July 1st, as appears from the transcript of proceedings brought here, and after H. Garbanati, one of the defendants, had filed a demurrer, the defendants, Garbanati and Davis, were solemnly called three times into court and came not.

Again on the 5th of July, 1878, a trial was had in said court as by default, and a judgment rendered in favor of Beckwith & Co., the plaintiffs below, against the defendants Garbanati and Davis.

In this state of facts H. Garbanati, one of the defendants below, comes into court and seeks by proceedings in error to have the judgment of the court below reviewed, reversed or modified.

To our minds it seems that there is but one conclusion that can be reached, viz.: that the plaintiff in error here, H. Garbanati, had abandoned his demurrer in the court below, even if it ever was properly there, and that he and his co-defendant, Davis, if not consenting to a judgment there in that court against themselves, certainly, so far as this court is advised by the transcript of the record, did not oppose or object to the rendition.

They had due summons in this action and failed to make a proper defense or any defense at all, at the right time in that forum to which they were duly summoned; and in which, if they had a valid objection or defense to the action under the laws of this territory, they should have appeared seasonably and made them. And failing to do so in the court below when properly called, they, nor either of them, have any cause of complaint here which this court can or ought to consider.

Wherefore it seems to the court that the proceedings in error in this case should be dismissed, and the judgment of the court below affirmed with costs under the statute.

Judgment affirmed.

PECK, J., dissenting.

The defendant in error moved for affirmance, "because the record presents no question for review." If the record presents a question, which this court could, it presents one which this court should have reviewed; and that fact answered the motion. It matters not what the merits of the questions are; it suffices that there was the question. Its merits would have remained for determination after the denial of the motion; because the record would speak what the motion denied: namely—the existence of the question. Granting the motion excluded, denying it admits the question. The record does present such a question; and the motion should have been denied, reserving the enquiry for hearing. The court, however, might have directed it to be heard in the first instance, and in answer to the motion; the principle would have been the same, the form different.

The defense in error put the motion on the ground that the plaintiff here, the defendant below, had there made no formal allegation of error. The prosecution in error opposed on the ground, that such allegation was unnecessary in case of patent defect of jurisdiction; and that the record prevented the enquiry whether there was not such defect, notwithstanding the statute of September 15th, 1877, entitled, "An act to provide for the organization of Crook and Pease counties, and to provide for holding courts therein."—Laws of 1877, page 34; and this proposition was correct.

As to objecting to a patent jurisdictional defect without a formal allegation of error. The record presents no allegation, as made below by the plaintiff in error, by exception or otherwise, that the lower court erred; but if it discloses an incurable defect of jurisdiction in that court, it discloses a defect that carries its exception with it, by operation of law, without formal allegation, wherever the record may go;

the defect vitiates the proceedings that appear in the record, and deprives it of all effect, except as evidence of their nullity.    Parties cannot confer—cannot waive the absence of jurisdiction.    Hence jurisdiction wanting, either party, as well the one who invokes, as the one against whom it is invoked, may at any stage of the proceedings below, before or after judgment, orally or in record form, claim a dismissal on that ground; and the lower court of its own motion should decline accepting a false jurisdiction; having accepted, should dismiss on discovery of its error.    Hence also, if a record thus defective, is taken to an appellate court, it is there for revision as to that. defect, the same as if a formal exception for the defect had been taken below, and preserved by the party against whom the fictitious jurisdiction has been exercised; in the court above it is equally open to attack by the party who obtained, and by the party against whom was obtained the judgment below; for neither can the latter be compelled to submit to it, nor the former to accept it; and neither party raising the objection in the upper court, that court of its own motion upon inspection of the record should do what the inferior court should have done—dismiss the suit, reversing as the case may require.    Want of jurisdiction is the want of all power but the single power to decline, accepting, or abandon, if accepted, false jurisdiction.    There is but one exception to the principle—namely, that jurisdiction over the person may be conferred by consent, because it is founded on personal privilege; but it must be simply such jurisdiction, and therefore, when acquired must, like jurisdiction of subject matter, be exercised within the prescribed territorial limit.

This principle of the common law, which is our rule, fixed, and clear beyond intelligent doubt, inherent in the very necessities of justice, and inseparable from the safe exercise of judicial power; and every court should readily listen to objection as to jurisdiction, the more carefully to guard against the mischiefs resultant from the erroneous assumption of it.    This court so decided at its

last term, in *McLaughlin* against *Upton*, assignee in bankruptcy of the Great Western Insurance Company. The civil code of the territory very fully recognizes the principle by its sections, 78, 80, 85 and 87, at pages 44 and 45 of the Compiled Laws, that all defenses shall be presented by answer or demurrer; that the defendant may demur to the petition because the court has no jurisdiction of his person, or the subject matter of the action; but that no objection being taken by answer or demurrer, he shall be deemed to have waived objections, "exceptionally objection to the jurisdiction of the court, and that the petition does not state facts sufficient to constitute a cause of action."

The record shows that the plaintiff in error demurred specifically for want of jurisdiction over his person; that subsequently he was defaulted; that the court assessed damages, and entered judgment against him on the default; and that issue, raised by the demurrer, was not otherwise passed upon, than by the proceeding, which so transpired after the demurrer was interposed. It follows from the principle, now explained, that the demurrer, if well taken, was superfluous; that all the proceedings against the present plaintiff, both before and after judgment, were void; and that it was our duty, on more inspection of the record, to reverse and dismiss.

My transcript was given to this court by the clerk of the second judicial district court, under what purports to be its seal for Uinta county; and all the proceedings, recited in it, transpired in that court, which is described as the second judicial district court, sitting in and for that county, where the venue was laid, where alone the court would exercise jurisdiction upon the summons, where the present plaintiff was alone—if at all—bound to appear, where he did appear, and where all the proceedings were had. The suit was commenced on February 27th, 1878. The record does not state in terms, but presents the necessary presumption that the court was held in all the proceeding below by the Hon. Jacob B. Blair, the judge of the second district.

The jurisdiction of a court, however extensive as to person and subject matter, is necessarily bound by territorial limits; existent within, is non-existent without those limits. If during those proceedings the second judicial district did not embrace Uinta county, they were jurisdictionally void; if it did embrace that county, they were jurisdictionally valid.   By the territorial statute of December 10th, 1875, entitled, "An act establishing the judicial districts within the Territory of Wyoming, and to provide for the holding of courts therein,"—Compiled Laws, page 385—it is provided that Laramie county shall compose the first, Albany and Carbon counties the second, and Sweetwater and Uinta counties the third judicial district.   So the divisions stood until December 15th, 1877, when the above stated statute of that date was passed: the purpose of which was the extension of the second district over Sweetwater and Uinta counties, and the substitution of a new for the existing third district, to consist of Crook and Pease counties. With this exception, no statute has been passed on the subject since the act of December 10, 1875.   Hence, if the second district court had jurisdiction over Uinta county during the proceedings which are in question, it was conferred by the act of 1877.   Whether it was or was not conferred depends upon, and involves a threefold inquiry— first, if this act contemplated that the extension of the second should commence before the organization of the new third district, could it have that effect under the Federal legislation, which allows the territorial legislature to district and re-district the territory ? secondly, does it contemplate that the extension commence before the new third was organized, for, if it did not, the extension has in neither view begun, because the new third has not been organized ; third, whether the act is valid, for if not, it conferred nothing.   This is an inquiry into jurisdiction, patent upon the record.   A fourth inquiry, though not suggested at the bar, is patent—whether, aside from the jurisdictional objection, Mr. Justice Blair was a competent

judge to hold the court below, in view of the act of December 15th, 1877, entitled, "An act to provide compensation for Hon. J. B. Blair, associate justice of the supreme court,"—Laws of 1877, page 29. That judge has exercised jurisdiction in the name of the second judicial district court over Uinta and Sweetwater counties, embracing one-half of the territory, under the alleged authority of the act of that date, which is first above mentioned, since the 17th day of December, 1877. If the authority has not existed, that jurisdiction has been fictitious; and all acts which have been done under it, void; because no *de facto* jurisdiction can be upheld, except as the exercise of a *de jure* jurisdiction by a *de facto* officer—the *de facto* quality applying to the officer who exercises, not to the jurisdiction which is exercised. Further, if he *que judge*, has been incompetent, for this reason alone, his acts have been void.

The motion touched an inquiry of primary moment—one which this court should have been rather eager to hear than to avoid. Notwithstanding these formidable considerations, without the matter having been heard upon its merits, or considered in conference, the majority of this court has granted the motion, and affirmed the judgment. If the jurisdictional objection was sound, *a fortiori* the motion should have been denied, the appeal sustained, the judgment reversed and action dismissed. The Federal Constitution, at Art. 4, Sec. 3 and subd. 2, provides that "Congress shall have power to make all needful rules and regulations respecting the Territory of the United States." Our organic act, at sec. 4, "that the Legislative power and authority of said Territory shall be vested in the governor and legislative assembly;" at sec. 6, that the legislative power of the "Territory shall extend to all rightful subjects of legislation, consistent with the constitution of the United States and the provisions of this act;" and, at sec. 4, that all bills shall be submitted to the governor for his concurrence or objection; at sec. 9, that the Territory "shall be divided into three judicial districts, and a district court

shall be held in each of said districts by one of the judges
of the supreme court at such time and place as may be pro-
vided by law, and the judges shall, after their appoint-
ment, reside in the districts which shall be assigned to them ;"
and this last provision is repeated in sec. 1865, of the U. S.
Rev. Stat. of 1875; and those statutes at sec. 1913, provide
that "the legislative assembly of Wyoming may organize,
alter or modify, the several judicial districts thereof, in such
manner as it deems proper and convenient;" and at sec.
1919, that, "it may fix and alter the times and places of
holding courts for the territory in such manner as it deems
proper and convenient;" and the organic act at sec. 7, that
" all township, district and county officers, not herein other-
wise provided for, shall be appointed or elected, as the case
may be, in such manner as shall be provided by the gover-
nor and legislative assembly of the Territory. The gover-
nor shall nominate, and by and with the consent of the
council, appoint all officers, not herein otherwise provided
for; and in the first instance the governor alone may ap-
point all such officers, who shall hold their offices until the
end of the first session of the legislative assembly." The
first session of that assembly was in 1869; and all these
statutes were in operation when the act of December 15th,
first mentioned, was passed.   This act provided in its
sec. 1, that the governor should immediately organize
Crook and Pease counties, by appointing for them re-
spectively the officers, then provided by law for the sev-
eral counties of the Territory, who should qualify, and enter
upon their offices, and hold them until the next general
election, or until their successors should have qualified; in
its sec. 2, that Crook and Pease counties "are hereby
organized into, and shall constitute the third judicial dis-
trict of the Territory, and William Ware Peck, associate
justice of the supreme court, is hereby assigned as judge of
said district, and is authorized and required to hold the
courts herein provided for, in said district;" in its sec. 3,
that Sweetwater and Uinta counties "are hereby attached

to and made part of the second judicial district, and J. B. Blair is hereby authorized and required to hold the courts therein, as now provided by law; " in its sec. 4, that there shall be held at the county seat of Crook county, one term of court annually, beginning on the first Monday of July, and a term at the county seat of Pease county annually, beginning on the first Monday of October; in its sec. 5, that the county seats of each county should be located by the commissioners of the county; in its sec. 6, that the governor might re-district the Territory and assign judges in case "of a vacancy occurring in the office of the judge of said third district, or of a change in the incumbency of the office; " in its sec. 7, that "all suits and proceedings, now pending in the courts of Uinta and Sweetwater counties, should continue and be proceeded with, as if the act had not been passed; and in its sec. 8, that the act should take effect from its passage.

If this statute contemplated the extension of the second before the organization of the new third district, could it have that effect under the Federal statute, which allows the Territorial Legislature to district and re-district? The provision that the Territory shall be divided into three districts, and a district court held in each by a resident judge, is imperative, at once puts upon the legislature a duty, and conditions and limits its performance; requiring a division to be made into three districts, it requires the districts to be maintained; requiring the court in each to be held by a resident judge, it requires the division to be made between the three judges, a district to a judge, the very clear purpose being to secure to the community, and against the caprices of legislation, the most judicious division, with reference to the wants to be supplied,—the most beneficial administration of law through the district courts by all the judges,—and, to that end, the localizing of the work, at the same time effectuating the judicial appointments; approximate equality must, therefore, have been intended.

The power to re-district is necessarily governed by the

same idea. It follows that the legislature could no more render one judge supernumerary, than it could two—two, than it could the three members of the supreme court; and so close the courts; the judicial appointments taking effect not by the supreme will of the Federal government, but by the supreme will of the territorial legislature. It follows that the legislature could no more reduce the territory to two districts, than to one—to one, thence to abolish the districts, and the courts; that, for a district to exist, three must exist; that one could not be destroyed, except as another was formed. It follows that this statute, if it contemplates the extension of the second, before the creation of the new third, conflicts with the Federal laws; and so far is void.

Does it intend that extension? The answer requires that it should be construed as an entire context; therefore each part relating to the rest; and in the presumption, that its purpose was subordinate to the law; and the presumption will hold, unless the statute overcomes it. Its provision that it shall take effect from its passage, does not mean that all its provisions shall operate at once; that would be impossible, and the construction absurd; but that they shall operate sequentially, according to the object—for that alone is possible, and that construction consistent. It declares as the first step to be taken, that the governor shall organize Crook and Pease counties by appointing and commissioning for them the officers, already provided by law for the several counties, which officers include county commissioners. As the second step, that the commissioners of each county shall locate its seat. As the third step, that the courts shall be held at those seats. All this accords precisely with the requirements of the Federal law, that the existing third shall continue, until the new third comes in. The language, that those counties "*are hereby*" organized into the third judicial district, is an ungrammatical expression, which intends a future effect, to result from a future act—the act of organization, which is to be; so that "are hereby"

signified "shall be" organized into, etc. Sequential to these provisions, in the order of operation, is the one declaring that "Sweetwater and Uinta counties are hereby attached to, and made part of the second judicial district," to be attached, they must be attached by the act; which is the whole source of the expression—the time of the attachment being prospective—the time of attaching arriving when they are severed from the old third. Hence the statute does not contemplate the extension of the second prior to the organization of the new district.

Is it valid? The court must take notice of the geographical status of the Territory, and of all its parts. At the passage of the act each of the counties, proposed for a new district, was in the feeble initial state of development; its population thin, and so small as to be unequal to furnishing the five hundred electors, whose petition for a county organization was requisite by the third section of the Act of December 8th, 1875, Compiled Laws p. 198, providing for the organization of those counties—though men and women were electors; and were in the extreme of disproportion to that of either the first district, or of the second as much larger the population of each of which amounted to thousands; the capital, industry, business of the projected new ones were in the same extreme of disproportion to those of severally the first and second districts: so that the unmistakable purpose of the project was, not to accomplish the idea of an approximate equality, and so to satify the organic act, but to promote disparity, and to violate the act. In addition to this extrinsic and characterizing fact, the statute discloses on its face that its direct object is to displace from his sphere the judge, whom it assigns to the new district. This feature involves two other objections—one, that the statute was an attack upon the dignity of the judicial office, and upon the independence and rectitude of the bench—the other, that it is an attempt to frustrate the constitutional action of the Federal government, and thus to conflict with the Constitution. For each of these reasons it was a breach of the trust reposed by the government in the Territory, and void.

Again: the first sentence of section seven of the organic act is by construction not to be read literally, but thus; "all township, district and county officers, not herein otherwise provided for, shall be appointed, or, in such manner as shall be provided by the governor and legislative assembly of the territory, elected;" because the literal reading would pass to the legislature control of the method of appointment, and conflict with the rest of the section on the subject; but the constructive reading keeps the section harmonious. "All officers, not herein otherwise provided for," means those who were to be appointed in the first instance by the governor, and to hold until the end of the first legislative session; that session has passed, that power expired, and no township, district or county officer can now be made, except under the permanent provision of the section—that is, by election or appointment—and if by the latter, by nomination of the governor, confirmed by the council. If the territorial statute is correct in its object, its method for accomplishing the object, defeats it.

Again: to district or re-district, a place or places for holding the court within the given district must, as a part of the process of district organization—which has to succeed the county organization—be designated; but, as no commissioners can be appointed, no designation can be made, and an attempt to re-district under the act would be abortive. But, suppose that the statute had validly provided for the county organization, and the county commissioners, so coming into existence, had designated the places in the district—the entire process of the district organization must be prescribed by "law," which means by the legislature and governor, who—the latter—must have the power to veto or of approval in the matter; the duty is imposed upon their discretion; that discretion applies equally to all the parts of the process, and no part of it can be delegated; it is a trust and cannot be shifted. Hence if the statute succeeds in other respects, it totally fails in this one.

Was the second district judge competent, as such, to sit

in the proceedings, which are under review? The statute above mentioned, relating to his compensation, provides:

*Section* 1.—That the Hon. J. B. Blair, associate justice of the supreme court of the territory, may have and receive an additional compensation of one thousand dollars per annum for his services as judge of the second judicial district of this territory, in holding terms of court in Albany and Carbon counties, and in Sweetwater and Uinta counties.

*Section* 2.—That the additional compensation allowed in the preceding section shall be paid in equal quarterly installments from the funds of the treasuries of said counties on warrants which the respective boards of county commissioners of said counties shall cause to be issued, each county aforesaid paying one-fourth of such additional compensation.

*Section* 3.—That if the said Hon. J. B. Blair do not hold the regular terms of court in said counties of Sweetwater and Uinta, then and in that event sections one and two of this act shall be inoperative and void; but the county commissioners of Albany county aforesaid may nevertheless allow and cause to be paid to the said Hon. J. B. Blair, as extra compensation for his services, as judge therein, the sum of five hundred dollars per annum, payable quarterly out of the county treasury, as other claims against said county are paid, which additional compensation shall continue to be allowed during the said J. B. Blair's incumbency of the judgeship of the second judicial district aforesaid.

*Section* 4.—This act to take effect and be in force from and after its passage.

Approved December 15th, 1877.

The two statutes of December 15th are in *pari materia;* and must be construed as if they were embodied in one; they stand as one; and I treat them as if that was their form. The act is imperative that he shall hold the courts in the additional, as well as in the original counties; and the words in the third section, "that if the said Hon. J. B.

Blair do not hold the regular terms of court in said counties of Sweetwater and Uinta, then and in that event " &c., do not leave it to his election to hold the court in the additional counties, but, anticipating that judicial construction may declare that he cannot hold them, provide that in that event he shall not be compensated for doing it, and that the absolute compensation, previously in the act provided for his holding the courts in Albany and Carbon counties, shall charge to one, which shall be contingent upon the will of Albany county. It becomes his duty to decide preliminarily upon the validity of the act; as no judge may assume to exercise power, before he has ascertained that he has it. In the same breath an act, which is void and unjurisdictional, charges him with its enforcement, and offers him a compensation, which it makes contingent upon his administering the act in the additional counties—doubly contingent—thus also creating in him a direct interest either to pass over the question of validity, and assume jurisdiction in the face of it, or to decide in favor of jurisdiction; and in either case to sit in his own favor; thus offering him a direct pecuniary interest in every proceeding which should come before him under the act. It is true that he might not have been affected by this interest; it is as true that he might have been. Whether he was, or was not, is a question too subtle for the law to enter into ; upon the ground of policy, in the interest of pure judicial action it pronounces, upon the fact of interest, that he was incompetent to sit. The record does not show that he was affected by the interest; and it was unnecessary that it should. The case of *Oakley* v. *Aspinwall et al.*, 3 New York, 547, completely sustains this proposition; and as a consequence, that his sitting here vitiates the judgment of this court — in the case. The affirmance embraces a penalty of five per cent. damages for bringing the case here.