The STATE of Wyoming, Petitioner,

v.

Deon F. HEINER, Respondent.

No. 83-83.

Supreme Court of Wyoming.

May 15, 1984.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., Michael L. Hubbard, Asst. Atty. Gen., and Roy D. Adcock, Lincoln County Atty., for petitioner.

Ted C. Frome and Gerald L. Goulding of Frome & Goulding, Afton, for respondent.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

THOMAS, Justice.

In this instance this court is urged to address the question of its authority to review, pursuant to a writ of certiorari, a ruling of a trial court granting a motion to suppress evidence in a criminal case. If the authority is present we then are asked by the State of Wyoming to determine whether an inventory of personal property claimed to have been destroyed in a fire should be suppressed in a case involving charges of arson and arson with intent to injure and defraud an insurance company. We also must address a pretrial ruling by the district court which would impose upon the State the burden of demonstrating the reasonableness under constitutional standards of the seizure of evidence obtained at the scene of the fire by investigators employed by the fire insurance company. The district court granted the motion to suppress the evidence in the form of an unsworn inventory of personal property furnished to a fire insurance adjuster, and

informed the prosecuting attorney of his responsibility to demonstrate the reasonableness of the seizure of evidence. The State of Wyoming sought review of these pretrial rulings pursuant to a petition for writ of certiorari. It is our conclusion that this court does have the authority and responsibility to review such pretrial rulings by trial judges in the exercise of its discretion. The facts and the law disclose that the rulings of the trial court were erroneous, and we therefore will reverse those rulings.

On December 22, 1982, a criminal complaint was filed in the justice of the peace court in Lincoln County, charging Deon Heiner with arson in violation of § 6-7-101, W.S.1977,[1] and with arson with intent to defraud his insurer in violation of § 6-7-105, W.S.1977.[2] Deon Heiner then was arrested pursuant to a warrant issued upon the criminal complaint, and on January 11, 13 and 14, 1983, a full-blown preliminary examination was held before the justice of the peace. At the conclusion of that preliminary examination the justice of the peace found that there was probable cause to believe that the crimes alleged in the complaint had been committed and that the defendant had committed those crimes.

On February 15, 1983, the transcript of the justice of the peace proceedings was filed in the district court, and on February 22, 1983, an Information was filed in the district court which was substantially identical to the criminal complaint earlier filed. The case then was set for arraignment on February 28, 1983, and on February 22,

1. Section 6-7-101, W.S.1977, provides as follows:

"Any person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto or any standing timber on public or privately owned land, whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two (2) nor more than twenty (20) years."

2. Section 6-7-105, W.S.1977, provides as follows:

"Any person who willfully and with intent to injure or defraud the insurer sets fire to or burns or attempts to do so or who causes to be burned or who aids, counsels or procures the burning of any building, structure or personal property, of whatsoever class or character, whether the property of himself or of another, which shall at the time be insured by any person, company or corporation against loss or damage by fire, shall be guilty of a felony and upon conviction thereof, be sentenced to the penitentiary for not less than one (1) nor more than five (5) years."

1983, an order was entered pursuant to which the matter was reset for March 21, 1983, at the request of defense counsel. On March 22, 1983, the court set the case for pretrial conference to be held on May 2, 1983, and on that same date the defendant filed a Motion to Suppress Evidence and Limit Comment Thereon, stating:

"Comes now the Defendant herein and moves the court to suppress all evidence gathered by the agents and employees of Farmers Insurance Company, and by officers and employees of the State of Wyoming after the time that the State received a tip on their hot line that the fire at the home of Defendant was caused by arson until Defendant was read his 'Meranda' [sic] Rights for the reason that from that moment on, the Defendant was a suspect for that crime.

"In the alternative, should the court deny the above motion, then Defendant moves the court to strike all evidence gained as a result of a taped interview with Cheryl Heiner, the wife of the Defendant, taken on December 30, 1982, by Deputy Fire Marshall, Tim Reikofski, and for an order limiting any comment in that interview at the trial of this matter; and,

"The Defendant moves the court for an order suppressing as evidence a list of personal property given by Defendant to Gerald Hansen, an insurance adjuster employed by Farmers Insurance Co.; and an order limiting any comment on that list at the trial of this case."

On April 4, 1983, a hearing was held by the court to deal with the Motion to Suppress Evidence and Limit Comment Thereon, and because of the unavailability of witnesses due to the weather that hearing was continued to May 11, 1983. On May 16, 1983, the court entered its Order Suppressing Evidence which provided in pertinent part as follows:

"It is hereby ORDERED and DECREED that:

"1. Defendant's motion to suppress the list of household items and other items given by Deon Heiner to Gerald Hansen is granted and the list shall not be received and admitted into evidence and no testimony or comment shall be received respecting the same, and the list is hereby suppressed, said list being identified in Plaintiff's Pretrial Memorandum as Exhibits 76 through 87.

"2. Before being admitted into evidence, any other exhibit that makes reference to Plaintiff's Exhibits 76 through 87 shall have the material that makes reference to Plaintiff's Exhibits 76 through 87 blocked out from the Exhibit so as to not be visible to the jury.

"3. Defendant's motion to suppress all other evidence is denied without prejudice."

In the meantime the State had filed a Motion in Limine which sought an order

"directing the defense counsel not to examine the following State's witnesses as to whether or not said witnesses ·gave the defendant *Miranda* warnings prior to their interviews of the defendant:

"Jerald Hansen

Greg Cline

Brent Halladay

Lynn Borg

"Plaintiff states that inquiry in the matters sought to be excluded would· be both immaterial and irrelevant to the case in that the witnesses were not police officials and were acting on behalf of Farmers Insurance Group, and such inquiry by defense counsel would tend to confuse the jury. Moreover, the interviews were non-custodial."

This motion was denied by the court.

On May 17, 1983, the case was reset for trial on June 13, 1983, and on May 20, 1983, a Petition for Writ of Review, or Writ of Prohibition, or Writ of Certiorari, or Writ of Mandamus was filed in this court by the State of Wyoming. On May 25, 1983, an Order Granting Writ of Certiorari was entered in this court and the Writ of Certiorari issued to the trial court. Pursuant to the Order Granting Writ of Certiorari further proceedings in the district court were stayed until the disposition of the case on certiorari.

In its brief to this court the State of Wyoming presents its statement of the issues as follows:

"I. DID THE TRIAL COURT ERR IN SUPPRESSING THE INVENTORY SHEETS VOLUNTARILY GIVEN BY THE DEFENDANT TO THE INSURANCE ADJUSTOR THREE DAYS AFTER THE FIRE, ON THE BASIS OF ENTRAPMENT OR FAILURE TO PROVIDE *MIRANDA* WARNINGS?

"II. DID THE TRIAL COURT ERR IN IMPLICITLY HOLDING THAT THE FOURTH AMENDMENT WAS APPLICABLE TO THE SEARCH AND SEIZURES ACCOMPLISHED BY PRIVATE INSURANCE INVESTIGATORS, AND THEREBY REQUIRING THE STATE TO SHOW THE REASONABLENESS OF THE SEIZURES AS A FOUNDATIONAL PREREQUISITE TO ADMISSIBILITY?"

The defendant articulates the issues to be dealt with in this way in his brief:

"1. Does the Supreme Court have jurisdiction to hear this appeal?

"2. If it does, should it decline to hear such cases on general policy grounds?

"3. Should the Supreme Court overturn the Trial Court's Order on suppression of evidence?

"4. Should the investigative employees of Farmers Insurance Exchange be treated like police officers and should their conduct in gathering information be held to the same standards as that required of police officers of the State of Wyoming?"

The threshold question of the authority of this court to review these evidentiary rulings by the trial court pursuant to a writ of certiorari is settled in principle by the decision of this court in *City of Laramie v. Mengel*, Wyo., 671 P.2d 340 (1983). In the instant case the rulings of the district court suppressed a list of personal property claimed to have been destroyed or damaged in the fire which was furnished by the defendant to an adjuster employed by the fire insurance company and required the State to justify under constitutional standards the reasonableness of the seizure of evidence such as photographs, burned wire, and a sample of a chemical substance from the scene of the fire by investigators employed by the fire insurance company. In this regard we note that the essence of the ruling by the municipal judges in *City of Laramie v. Mengel*, supra, was that evidence of a refusal by an accused person to submit to a chemical test to determine blood alcohol content was not admissible at the trial of the case. We did note in *City of Laramie v. Mengel*, supra, that review pursuant to the statutes providing for a bill of exceptions was not available to the city. In that opinion we quoted language from *Call v. Town of Afton*, 73 Wyo. 271, 278 P.2d 270 (1954), in which the court observed in substance that the writ of certiorari subserves a good purpose in instances in which an appeal (or a bill of exceptions) is not plain, speedy and adequate. With respect to rulings which suppress important evidence to be offered by the State in a criminal prosecution the inadequacy of the bill of exceptions after an acquittal is patent. We then would simply add to the authorities cited in *City of Laramie v. Mengel*, supra, references to *State v. Johnson*, Tenn., 569 S.W.2d 808 (1978); *State v. McCormick*, Tenn.Cr.App., 584 S.W.2d 821 (1979); *State v. Bradfield*, 29 Wash.App. 679, 630 P.2d 494 (1981); and *State v. Chatmon*, 9 Wash.App. 741, 515 P.2d 530 (1973). In these several cases the respective courts recognized the propriety of a writ of certiorari to review pretrial rulings relating to the suppression of evidence.

■ In this case, like *City of Laramie v. Mengel*, the rulings of the district court were premised upon constitutional grounds, which results in the presentation to this court of issues of constitutional magnitude. Whether constitutional protections with respect to inculpatory statements of an accused and evidence obtained from the person or property of the accused are to be extended to private individuals is a significant question of first impression in the State of Wyoming. Consequently, we conclude that because of the importance of

the evidence suppressed or the use of which is potentially denied to the State of Wyoming; the constitutional magnitude of the issues raised; and the importance of determining the rule with respect to such matters in the State of Wyoming, the court appropriately exercised its discretion in granting the writ of certiorari in this case.

We turn then to a consideration of the ruling of the district court suppressing as evidence the list of personal property purportedly damaged or destroyed in the fire which was furnished by Deon Heiner to the adjuster employed by the fire insurance company. A brief background resume with respect to this document is helpful. The record discloses that on December 8, 1982, the day after the fire, the adjuster met with Deon Heiner, who was concerned about how soon he might be reimbursed for the loss he sustained in the fire. The adjuster informed him that one item that would be necessary for his claim would be an inventory of personal property which had been damaged or destroyed in the fire. The insurance adjuster informed the defendant that he had commitments for the following Monday and Tuesday and could not return to Star Valley, Wyoming, on those days. Heiner inquired if he could return on December 10, 1982, if the inventory could be prepared by that time, and the insurance adjuster agreed to do so. The articles included in the list of personal property furnished by Heiner on December 10, 1982, were numerous and the inventory indicated an aggregate value of some $65,-000. At that time it was the conclusion of the adjuster that some of the items shown on the list had not been in the home at the time of the fire. After the criminal charges had been filed against Deon Heiner a verified proof of loss was filed with the fire insurance company in which a claim was made for only $9,983 for personal property lost or destroyed in the fire. The theory of the State of Wyoming is that the furnishing of the initial inventory is relevant with respect to the second count charging the commission of arson with intent to injure or defraud an insurance company, and that this is an extremely impor-

tant item of evidence with respect to the question of specific intent. The State also urges that this evidence is relevant because it discloses motive which would be helpful in reaching a conclusion as to the identity of the person who set the fire.

The basis for the ruling of the district court suppressing the inventory of personal property as evidence is elusive. In his Motion to Suppress Evidence and Limit Comment Thereon the defendant simply requested the suppression of the inventory. In his Brief in Support of Motion to Suppress, the defendant urged that a demand for a formal proof of loss signed and sworn to by the defendant and his furnishing of the same pursuant to the fire insurance policy rendered the prior list (the inventory in question) inadmissible because it would not have been relied upon by the insurance company in adjusting the loss. During the course of dialogue between counsel and the court the court paraphrased the position of the defendant to the effect that constitutional guarantees would be a foundational matter for the admissibility of any testimony if the insurance company investigators were in fact peace officers.

Later in the dialogue the court indicated an understanding of § 6-7-105, W.S.1977, to the effect that the inventory would not be relevant to the fraud count if it were not to be relied upon by the insurance company. The district judge emphasized this at another point in the dialogue when he indicated that he was inclined to grant the suppression of the inventory "on the basis that in order to have a foundation of relevance, on an issue of fraud, then you must use that document which was the basis of the alleged fraudulent claim, not something that wasn't used for the alleged fraudulent claim, but the actual thing that was used for the alleged fraudulent claim." Subsequently in considering the statute the court indicated that admissibility was not a question of relevancy but that the question of admissibility was based upon the Fourth and Fifth Amendment guarantees and Sixth Amendment guarantees. Essentially he stated that the question of admissibility

must be based upon whether or not there were unreasonable searches and seizures.

Having said all this, the court then ruled with respect to the list of personal property which Deon Heiner gave to the insurance adjuster that the problem with that exhibit was on the foundation, and he granted the motion to suppress the exhibit. Finally, after this court had granted the petition for a writ of certiorari, the district court inserted in the record a Memorandum of the Court, a copy of which is attached hereto as Appendix A. The thrust of that memorandum is to inject, for the first time, into the proceedings the proposition that the basis of the court's ruling was a conclusion that pursuant to Rule 403, W.R.E.,[3] the court had exercised its discretion in concluding that the probative value was substantially outweighed by the danger of unfair prejudice.

This last proclamation by the district court disposes of the question of relevance of the inventory in this case. A conclusion that the evidence is relevant is correct, because the gravamen of the offense found in § 6–7–105, W.S.1977, is not the fraud, but instead it is the setting fire or burning or attempting to do so of any building, structure, etc., "with intent to injure or defraud the insurer." *Johns v. State*, 144 Fla. 256, 197 So. 791 (1940); *Commonwealth v. Cooper*, 264 Mass. 368, 162 N.E. 729 (1928); *State v. Greer*, 243 Mo. 599, 147 S.W. 968, 28 Ann.Cas. 1913C 1163 (1912). See also *Parb v. State*, 143 Wis. 561, 128 N.W. 65 (1910). In an instance in which the State is charged with proof of a specific intent beyond a reasonable doubt, the relevance of a potential false claim of loss to the issue of the specific intent is obvious to all. The advice by the district court that it had premised its ruling upon an exercise of its discretionary authority under Rule 403, W.R.E., renounces any earlier comments it may have made with re-

spect to relevance. If this was the court's intention it is eminently correct.

With respect to the exercise of the court's discretion under Rule 403, W.R.E., we read the Memorandum of the Court to the end that it concluded that unfairness in obtaining evidence became a factor to be weighed against the probative value of the proffered evidence in the exercise of its discretion. We must say to the district court that however reasonable that construction appeared to the court it is erroneous. The manner in which relevant evidence is obtained may lead to a conclusion that it is not admissible in evidence. See Rule 402, W.R.E. If the evidence is not admissible there is no occasion for the court to exercise its discretion under Rule 403, W.R.E. 22 Wright and Graham, Federal Practice and Procedure, § 5213, pp. 258–259 (1978). The district judge must have concluded that the exhibit was admissible as not having been unlawfully obtained when he invoked Rule 403, W.R.E. The only question then to be resolved, under Rule 403, W.R.E., is whether the prejudicial impact of the evidence at trial is "unfair" and if so whether it substantially outweighs the probative value. See 2 Louisell and Mueller, Federal Evidence, § 126 (1978); and 22 Wright and Graham, Federal Practice and Procedure, § 5215 (1978). The district court then is ruling, in effect, that it is unfair for the State of Wyoming to attempt to prove that Mr. Heiner set fire to his home with the intention of defrauding his insurance company by injecting into evidence an inflated inventory of personal property allegedly damaged or destroyed in the fire. This is tantamount to ruling that even though the State has the burden of proof beyond a reasonable doubt it is unfair for it to introduce any evidence that might incriminate the defendant. We are unable to discern from the record or any authorities which have been called to our attention the manner in which unfair preju-

---

**3.** Rule 403, W.R.E., reads as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

dice attaching to this exhibit in the context of the trial of the case substantially outweighs the probative value of the exhibit.

█ Finally we consider whether in fact the district judge ruled that the inventory should not be admitted into evidence because the insurance investigator was an agent of law enforcement charged with the duty of warning Mr. Heiner that any statements he made would be admissible in evidence and could be used against him, and informing him of his right to counsel prior to taking any such statements. We are reminded that this essentially was Mr. Heiner's position in connection with his motion to suppress.

This theory in part depends upon the facts. In this regard the following colloquy appears in the closing part of the record of the suppression hearing:

"THE COURT: If it makes any help to you, Mr. Frome, the Court concludes that these private insurance investigators were gathering evidence for purposes of prosecution.

"MR. FROME: I'll then move on to the next statement.

"Since the court has determined they were agents of the State, or an alter-ego of law enforcement—

"THE COURT: I didn't say that. I concluded that these agents were gathering evidence for purposes of prosecution.

\*     \*     \*     \*     \*     \*

"THE COURT: The Court didn't find that they were agents of the State. The Court finds that these insurance people were gathering evidence for purposes of prosecution.

"MR. ADCOCK: As well as perhaps for their insurance company.

"THE COURT: There were two things,—

"MR. ADCOCK: Yes.

"THE COURT: —Mr. Adcock, and there is absolutely no question about that.

\*     \*     \*     \*     \*     \*

"THE COURT: All right. The Court has already indicated that it concludes that from the evidence which the Court believes is uncontradicted, that the agents, servants and employees of the insurance company were gathering evidence for two specific purposes: For the purpose of determining insurance company claims, payment and civil activities; and they were gathering evidence for purposes of criminal proceedings."

The district court concluded that the insurance investigators were not agents of the State, but also concluded that because they were gathering evidence for the purpose of criminal prosecution their activities would be subject to the same rules that apply to law enforcement officers with respect to criminal investigations. It well may be that it was on this basis that the court concluded that there was no foundation for the admissibility of the list of personal property because it is conceded that the insurance adjuster did not present to Deon Heiner any advice with respect to his constitutional rights prior to obtaining the inventory from him. It is our conclusion, however, that if that is the basis for the district court's ruling it was erroneous.

It is appropriate to deal with this last possible basis for the ruling by the district court in the broader context of the second issue argued by the State of Wyoming. This involves the propriety of the district court's requirement that the State must show the reasonableness of seizures of evidence by the fire insurance company's investigators which implicitly extends the protections of the Fourth Amendment of the Constitution of the United States of America to the obtaining of evidence by private individuals. Conceptually there is no good reason to distinguish between the Fourth Amendment and the Fifth Amendment to the Constitution of the United States of America in discussing this principle. See *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, reh. denied 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961); and *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

The overwhelming weight of authority in this country is to the effect that Fourth Amendment protections are not invoked when evidence is obtained by a private individual. This view still is justified by *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). The cases which specifically involve evidence by investigators for fire insurance companies are *People v. Mangiefico*, 25 Cal.App.3d 1041, 102 Cal.Rptr. 449 (1972); *Lester v. State*, 145 Ga.App. 847, 244 S.E.2d 880 (1978); *People v. Vlcek*, 114 Ill.App.2d 74, 252 N.E.2d 377 (1969), cert. denied 400 U.S. 822, 91 S.Ct. 42, 27 L.Ed.2d 50 (1970); *Stone v. Commonwealth*, Ky., 418 S.W.2d 646 (1967), cert. denied 390 U.S. 1010, 88 S.Ct. 1259, 20 L.Ed.2d 161 (1968). Cf., *Romano v. Home Insurance Company*, 490 F.Supp. 191 (N.D.Ga.1980). A much more lengthy list of cases involving many other factual situations is encompassed in Annotation 36 A.L.R.3d 553 (1971). It does appear that in some jurisdictions an exception is recognized relating to private security personnel, e.g., *People v. Zelinski*, 24 Cal.3d 357, 155 Cal.Rptr. 575, 594 P.2d 1000 (1979); *Commonwealth v. Leone*, 386 Mass. 329, 435 N.E.2d 1036 (1982). Of course if the private individual is in fact an agent of law enforcement officers then the exclusionary rule may pertain. Since the district court in this instance specifically found that the fire insurance company investigators were not agents of the law enforcement officers we have no need to consider the application of that exception in this instance.

The sole jurisdiction which we have been able to identify in which a different rule prevails is in our sister state of Montana. The rule in Montana appears to be that the same constitutional protections pertain whether a search and seizure involves private individuals or law enforcement officers. *State v. Hyem*, Mont., 630 P.2d 202 (1981). The most charitable rationalization of that ruling is that it depends upon a peculiar provision of the Constitution of the State of Montana which is not found in the constitution of this state. Even so, the dissenter to the court's opinion in *State v.*

*Hyem*, supra, points out that other states having the same style of constitutional provision have adhered to the usual rule distinguishing private individuals from law enforcement officers. On the other hand one well could conclude, having perused the somewhat tortured history of that rule in the State of Montana, that the rule is chimerical. Unfortunately in this instance Deon Heiner persuaded the district judge to follow that rule in essence.

We have considered the cases cited to us by Deon Heiner to attempt to discover any basis for espousing in this state a rule other than the majority rule. We can find none. In *Stapleton v. Superior Court of Los Angeles County*, 70 Cal.2d 97, 73 Cal. Rptr. 575, 447 P.2d 967 (1969), the court invoked the exclusionary rule because of a joint operation by the private investigators and police officers. In dealing with the issue that court stated in passing:

" * * * The Fourth Amendment does not apply, however, to searches by private individuals. * * * " 73 Cal.Rptr. at 576–577, 447 P.2d at 968–969.

In *State v. Furuyama*, 64 Haw. 109, 637 P.2d 1095 (1981), and *State v. Sheppard*, Iowa App., 325 N.W.2d 911 (1982), the existence of an agency relationship between the private individual and the law enforcement officers specifically was found. In *People v. Zelinski*, supra, and *Commonwealth v. Leone*, supra, the exclusionary rule was applied or suggested with respect to private security officers. This exception to the majority rule is alluded to above. Even so, the Massachusetts court in *Commonwealth v. Leone*, supra, remanded the case for the purpose of determining the propriety of the guard's action in light of identified reasons for special treatment of a privately employed special police officer acting upon his employer's behalf, with the tenor of the opinion being that if the requirements articulated were met the evidence would be admissible. *People v. Grevious*, 119 Mich.App. 403, 327 N.W.2d 72 (1982), involved an interrogation of a prisoner in a penal institution by custodial personnel without furnishing any warning as

to his constitutional rights identified in *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), reh. denied *California v. Stewart*, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966). The court concluded that state action under the circumstances was obvious.

As indicated, the same considerations apply with respect to any Fifth Amendment implications involved in questioning or in obtaining the inventory from Deon Heiner. *People v. Vlcek*, supra, specifically involved failure to provide the warnings articulated in *Miranda v. State of Arizona*, supra. Other cases make clear the proposition that the requirement to give those warnings depends upon the existence of custodial interrogation by law enforcement officers and is not invoked by questioning by a private citizen. *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *United States v. Warinner*, 607 F.2d 210 (8th Cir.1979), cert. denied 445 U.S. 927, 100 S.Ct. 1313, 63 L.Ed.2d 760 (1980); *United States v. Parr-Pla*, 549 F.2d 660 (9th Cir.1977), cert. denied 431 U.S. 927, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977); *United States v. Maddox*, 492 F.2d 104 (5th Cir.1974), cert. denied 419 U.S. 851, 95 S.Ct. 92, 42 L.Ed.2d 82 (1974); *United States v. Casteel*, 476 F.2d 152 (10th Cir.1973); *United States v. Antonelli*, 434 F.2d 335 (2nd Cir.1970); *Yates v. United States*, 384 F.2d 586 (5th Cir.1967); *Scoggins v. State*, 258 Ark. 749, 528 S.W.2d 641 (1975); *People v. Vlcek*, supra; *People v. Raitano*, 81 Ill.App.3d 373, 36 Ill.Dec. 597, 401 N.E.2d 278 (1980); *Luckett v. State*, 158 Ind.App. 571, 303 N.E.2d 670 (1973); *Trinkle v. State*, 259 Ind. 114, 284 N.E.2d 816 (1972); *Commonwealth v. Mahnke*, 368 Mass. 662, 335 N.E.2d 660 (1975), cert. denied 425 U.S. 959, 96 S.Ct. 1740, 48 L.Ed.2d 204 (1976); *State v. Brydon*, Mo.App., 626 S.W.2d 443 (1981); *State v. Colton*, Mo.App., 529 S.W.2d 919 (1975); *State v. Kelly*, Mo., 439 S.W.2d 487 (1969); and *State v. Bolan*, 27 Ohio St.2d 15, 56 Ohio Op.2d 8, 271 N.E.2d 839 (1971).

In discussing the matters before it at the suppression hearing the district court also suggested an implication of Sixth Amendment rights with respect to deprivation of the right to counsel. It is clear that in this jurisdiction a Sixth Amendment right to counsel attaches only when adversarial criminal proceedings have been commenced against an accused. *Brown v. State*, Wyo., 661 P.2d 1024 (1983). It follows that in this instance the materials, whether inculpatory statements or evidence obtained at the scene of the fire, which were obtained prior to the filing of the criminal complaint, were not obtained in violation of Deon Heiner's Sixth Amendment right to counsel.

We hold that the district court erred in suppressing the list of items purportedly damaged or destroyed in the fire which was furnished to the insurance company adjuster on December 10, 1982, and that the district court espoused an erroneous rule of law in suggesting that it would be the burden of the State to demonstrate the reasonableness of the seizure of evidence from the scene of the fire by the insurance company investigators. These holdings makes it unnecessary in this instance for the court to consider other bases for admissibility which have been argued, such as non-custodial interrogation; consent to search and seizure; or any other justifications that might be significant if the evidence had been obtained by law officers rather than private individuals. We reverse the rulings of the district court, dissolve the stay of proceedings in the district court, and remand the case for further proceedings in accordance with the rulings articulated in this opinion.

STATE OF WYOMING
COUNTY OF LINCOLN

IN THE DISTRICT COURT
THIRD JUDICIAL DISTRICT

THE STATE OF WYOMING
　　　　　Plaintiff

VS

CRIMINAL NO. 1677

DEON HEINER
　　　　　Defendant

## MEMORANDUM OF THE COURT

In consideration of the action taken by the Supreme Court in response to Plaintiff's Petition for Review, it is appropriate that the Supreme Court should be advised of the basis of the Trial Court's ruling.

Pursuant to Rule 403, Wyoming Rules of Evidence, the Court in its *discretion* ruled on the admissibility of the inventory prepared by Defendant. Rule 403 provides:

*Although relevant,* evidence *may* be excluded if its probative value is substantially outweighed by the danger of *unfair prejudice,* confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

The Court declared the inventory inadmissable. Some of the facts considered by the Court were:

1. The fire department put out the fire in the Heiner home and left. The scene of the alleged crime was not seized and no law enforcement agencies started an investigation.

2. Shortly after the fire an independent insurance adjustor, hired by the Defendant's insurance company, arrived, inspected the home and talked with the Defendant. The adjustor quickly suspected that the fire was arson and the Defendant was the perpetrator.

3. However, while the adjustor interviewed a member of the fire department, who was also a police officer in a nearby municipality, the adjustor did not report his suspicions to the Lincoln County Sheriff or to the State Fire Marshall. He did not demand an investigation.

4. Instead, four private investigators were hired by the insurance company, two of whom secured re-entry to the alleged crime scene without the burden of a warrant.

5. The Adjustor asserted that this private investigation was being done for insurance purposes. However, the adjustor also admitted that evidence was being gathered in contemplation of the same being used in criminal proceedings.

6. The Adjustor interviewed the Defendant. He advised the Defendant

a. That the Defendant should prepare a *detailed* inventory.

b. That after the inventory was prepared, the two of them would go over it in an effort to reach an agreement.

c. When they had reached an agreement, he would help the Defendant prepare and submit a claim to the insurance company; and that the quicker the inventory was prepared, the quicker Defendant would be paid.

d. That Defendant had an inventory prepared by December 10, 1982, approximately three days after the fire.

e. That upon seeing the inventory the Adjustor knew there were items listed which were not in the home.

f. However, the adjustor said nothing to the Defendant. He did not *adjust* the inventory. He did not question the inventory. He did not reject the inventory. He did not help the Defendant reduce the inventory to a proper form of claim under the policy.

g. After the private investigators concluded their examination of the scene, and more than a week after the fire, the private investigators for the first time contacted the State Fire Marshall. There

was no evidence the insurance company ever contacted the Sheriff.

h. After the Defendant had been charged with arson, the insurance company demanded that he submit a sworn proof of loss as required by the policy as a condition for payment of a claim.

i. Defendant complied, resulting in two inventories of widely differing value, the first of which should not be admitted at trial.

DATED AND SIGNED THIS 27th DAY OF MAY, 1983.

/s/ John D. Troughton
JOHN D. TROUGHTON
DISTRICT JUDGE

ROONEY, Chief Justice, concurring, with whom THOMAS, Justice, joins.

I concur with all of that said in the majority opinion but find it appropriate to indicate a few of the fallacies contained in the dissenting opinion.

### FALLACY NO. 1: JUSTICE

The dissenting opinion begins with reference to there being a subversion of justice in allowing certiorari in a criminal case or in accepting an appeal by the state from a final order terminating the proceeding before jeopardy attaches in a criminal case. The dissenting opinion contends that a bill of exceptions taken pursuant to §§ 7–12–101 through 7–12–105, W.S.1977, is the only means available to the people of the state by which an error in a criminal case can be reviewed by us.

Since the bill of exceptions can be used only to settle the question concerning an error at the trial level without affecting the result of the action taken against the defendant[1], the dissent would hold that the defendant is allowed to take advantage of any error *without regard as to whether or not such error resulted in a perversion of justice.* As an example, the introduction into evidence of a statement by a defendant admitting guilt and the introduction of

physical evidence of sexual assault could be attacked by the defendant as improper through a motion in limine made before jeopardy attaches. Granting of the motion would sabotage the people's case. The prosecution could not succeed, and the case would have to be dismissed. Under the dissent, such would leave the defendant his freedom without any determination of his guilt or innocence. Conversely, if the order were subject to appeal, directly or by certiorari, and the trial court were found to have erred, the case could be remanded and the trial could proceed with, perhaps, a dangerous rapist being removed from a position of hurting others.

But it can work the other way. If the trial court denied the motion in limine, the dissent's position would leave the defendant with no alternative but to face the time and rigors of a long trial in which the evidence would be used. Thereafter, on his appeal the trial court could be found to have erred in admitting the evidence, allowing the defendant his freedom only after he suffered through an expensive and lengthy trial with accompanying mental anguish and pretrial and preappeal incarceration. If defendant had the right to an earlier appeal of the order denying his motion in limine, directly or by certiorari, he would have been spared the difficulties of trial and lengthy incarceration.

Either way, justice would be better obtained by use of the certiorari or interlocutory appeal, or through the direct appeal of the ruling on the motion in limine as advocated by Justice Raper in *State v. Faltynowicz*, Wyo., 660 P.2d 368 (1983) (Raper, Justice, specially concurring), a case with which Justice Rose disagrees in his dissent.

In his specially concurring opinion in *Faltynowicz*, in which I joined, Justice Raper ably and fully exposited the availability of an appeal from certain orders issued prior to judgment in a criminal case. His research as therein set forth established the

---

1. Section 7–12–105, W.S.1977, provides:
   "The judgment of the court in the case in which the bill was taken shall not be reversed nor in any manner affected, but the decision of the supreme court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may afterwards arise in the state."

fact that the people of the state have means to bring error to this court in a criminal case other than through the statutory bill of exceptions procedure. It would be redundant for me to repeat that said by Justice Raper in *Faltynowicz* which would also have application to the writ of certiorari here under consideration, but that said by Justice Raper also exposes the fallacies in the dissenting opinion.

It should also be constantly kept in mind that justice is a two-way street. A defendant in a criminal case is absolutely entitled to justice. So also are the people of the state entitled to justice in connection with that case.

In recognition of the need for justice in such instances and also in certain situations in civil matters, this court began the process of establishing a rule to allow interlocutory appeals in such pertinent instances or situations. The rule has not yet progressed through the rules committee. This court recognized the potential set forth by Justice Raper in *State v. Faltynowicz*, supra, whereby the application of Rules 1.04 and 1.05, W.R.A.P.,[2] would provide the vehicle for rendering justice in some instances. However, it was felt that the review should be discretionary and not a matter of right so that the cleavage between that subject to such review and that not so qualifying would not be significant. Both certiorari and the interlocutory appeal are discretionary and accomplish that end. Pending enactment of the interlocutory appeal rule, this court opted to use the power of certiorari, as granted by the constitution and as existed at common law, in those instances wherein justice could best be served through final settlement of a material issue of the case prior to trial in a civil matter and prior to jeopardy in a criminal matter.

In the case now before us, the trial court erred in suppression of evidence vital to the presentation by the people of the state. Justice requires an ultimate fair determination of defendant's guilt or innocence of the charge of arson. Certiorari furthers justice in this case by providing, prior to the time of jeopardy, the means to correct the error of the trial court with reference to admissibility of evidence upon which the determination of guilt or innocence should be made.

Use of the writ of certiorari is a means of furthering justice and not the contrary.

FALLACY NO. 2: DOUBLE JEOPARDY

It must be *emphasized* that once the defendant is put in jeopardy, neither the author of the majority opinion and those concurring with him nor anyone else contends that the people of the state can secure interlocutory review by certiorari or otherwise. A defendant cannot twice be put in jeopardy for the same offense. Art. 1, § 11, Wyoming Constitution. After jeopardy attaches, the people of the state may request review of a ruling on a legal issue only through the bill of exceptions, but, as reflected in § 7–12–105, supra (see fn. 1), such review, if granted, will not affect the judgment in favor of the defendant. Of note is the fact that the section concerns only the "judgment." Section 7–12–103, W.S.1977, requires the prosecution to give reasonable notice to the judge "who presided at the trial." Thus, the procedure for use of a bill of exceptions as set forth in § 7–12–101 et seq., W.S.1977, is available only after the trial. It does not purport to apply to orders prior to the judgment let alone prior to jeopardy.

Cases cited in the dissenting opinion concern instances in which the defendant *was* put in jeopardy. In most cases, the judgment had been rendered. The courts were there refusing "appeals" after the defendant was put in jeopardy. Those cases are not proper precedent for the question before us.

---

**2.** Rule 1.04, W.R.A.P., provides:
"A judgment rendered or final order made by a district court may be reversed in whole or in part, vacated or modified by the Supreme Court for errors appearing on the record."

Rule 1.05, W.R.A.P., provides in part:
"A final order is: (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment * * *."

## FALLACY NO. 3: CONSTITUTIONAL AUTHORITY

The dissent attempts to change the plain meaning of Art. 5, § 3, of the Wyoming Constitution by suggesting that it is conditioned on Art. 5, § 2. Art. 5, § 2, grants appellate powers to the court. Art. 5, § 3, defines the original jurisdiction of the court.[3]

Art. 5, § 3, is plain and unambiguous in providing that:

"* * * The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, *certiorari*, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. * * *" (Emphasis added.)

The phrase "necessary and proper to the complete exercise of its appellate and revisory jurisdiction" modifies only "other writs" inasmuch as many of the enumerated writs have nothing to do with appellate or revisory jurisdiction. The power granted is to issue a writ of certiorari without any strings attached thereto.

The common-law writ of certiorari is of ancient origin. *St. George v. Larson*, 125 Vt. 352, 215 A.2d 511, 512 (1965); *McKenna v. New Jersey Highway Authority*, 19 N.J. 270, 116 A.2d 29, 31 (1955). It is a writ requiring the certification of the record and proceedings from a court of record or other tribunal or officer exercising a judicial function for revision and correction in matters of law. *Lenz v. Cobo*, 338 Mich. 383, 61 N.W.2d 587, 592 (1953); *Toulouse v. Board of Zoning Adjustment*, 147 Me. 387, 87 A.2d 670, 673 (1952). Certiorari differs from a writ of error in that the latter is a writ of right while the former is discretionary. *Levy v. Gerhard*, 74 R.I. 288, 60 A.2d 494, 495, 4 A.L.R.2d 345 (1948); *Hyde v. Shine*, 199 U.S. 62, 25 S.Ct. 760, 765, 50 L.Ed. 90 (1905). It is a remedial, revisory, supervisory and prerogative writ. *Reagan v. Rhodes*, 264 Ala. 39, 84 So.2d 647, 653 (1956); *Wattenbarger v. Tullock*, 197 Tenn. 279, 271 S.W.2d 628, 631 (1954); *Waltman v. Ortman*, 233 Ala.

170, 170 So. 545, 547 (1936). Inasmuch as certiorari is more than an appellate power, Art. 5, §§ 2 and 18, of the Wyoming Constitution have no pertinency to it. As already stated, Art. 5, § 3, supra, has to do with original jurisdiction of the supreme court, whereas Art. 5, §§ 2 and 18, concern appellate jurisdiction of the court. That provided in Art. 5, § 3, does not depend on "rules and regulations as may be prescribed by law."

The argument in the dissenting opinion on this point is not only flawed in this respect, but the authorities cited therein do not pertain to the circumstances here involved. The quotation in the dissenting opinion from *Mau v. Stoner*, 14 Wyo. 183, 83 P. 218, 219 (1905), begins:

"* * * It is well settled that, *in the absence of a direct constitutional requirement*, the right of appeal does not exist unless expressly conferred by statute. * * *" (Emphasis added.)

There is a "direct constitutional" power granting to the supreme court the right to issue a writ of certiorari. Cases and authorities referred to in the dissenting opinion which depend on statutory authority for appeal and review are not pertinent to the situation in which there is direct constitutional power providing for certiorari.

An attempt was once made to abolish by statute the use of the writ of certiorari in civil cases. Ch. 60, § 801, Laws of Wyoming 1886, last codified as § 3–5323, W.C.S.1945:

"Writs of error and certiorari to reverse, vacate or modify judgments or final orders in civil cases are abolished; but court shall have the same power to compel transcripts of the proceedings containing the judgment or final order sought to be reversed, to be furnished, completed or perfected as they heretofore had under writs of error and certiorari."

Of interest to failure of the dissenting opinion in this case are: (1) the legislature only abolished the writs in civil cases, by impli-

---

**3.** See Fallacy No. 4 (infra) re certiorari being    other than an "appeal."

cation not doing so in criminal cases, and (2) the constitution (adopted in 1890) retained certiorari in face of the *prior* legislative action abolishing it. In any event, we held in *State v. Dahlem*, 37 Wyo. 498, 263 P. 708, 709 (1928), that the right to certiorari existed notwithstanding attempted abolition by statute. See *G–W Development Corporation v. Village of North Palm Beach Zoning Board of Adjustment*, Fla.App., 317 So.2d 828 (1975); *State ex rel. Pearson v. Hansen*, Wyo., 409 P.2d 769 (1966); *Call v. Town of Afton*, 73 Wyo. 271, 278 P.2d 270 (1954); *Batty v. Arizona State Dental Board*, 57 Ariz. 239, 112 P.2d 870 (1941).

A more pertinent consideration, not mentioned in the dissenting opinion, arises from Rule 1.06, W.R.A.P. It reads:

> "Proceedings in error are hereby abolished and any judgment or final order reviewable by the district court or Supreme Court may be reviewed only by appeal in accordance with the rules herein provided, and the words 'proceeding in error' where used in the laws of this state shall be held to mean 'appeal.' Writs of error are abolished."

Of course, the court can no more vary the constitution by rule than can the legislature by statute. In any event, there is a definite distinction between "certiorari" and "proceeding in error" or "writs of error." The quotation from the statute purporting to abolish certiorari, supra, recognizes the distinction by referring to "writs of error *and* certiorari" (emphasis added). As noted, supra, Art. 5, §§ 3 and 18, of the Wyoming Constitution recognize the distinction. Certiorari is discretionary. A writ of error is a writ of right.

The constitution makes certiorari available for use by the supreme court, but the court will use it sparingly and only in the interest of justice.

### FALLACY NO. 4: APPEAL vs. CERTIORARI

The dissenting opinion treats appeal and certiorari as identical. I have already noted the distinction made between them historically, including the language in Ch. 60,

§ 801, Laws of Wyoming 1886, and last codified § 3–5323, W.C.S.1945, supra, and as reflected in the Wyoming Constitution. The two A.L.R. annotations referred to and quoted from in the majority opinion, i.e., 109 A.L.R. 794 and 91 A.L.R.2d 1096, make the definite distinction between appeals and writs of error on the one hand and certiorari on the other hand.

Most of the dissenting opinion is predicated on law as it pertains to an appeal. The attempt to apply it to certiorari fails in view of the historical and practical distinction between the two. Specific instances of this failure are set forth in Fallacy No. 6, infra.

Mentioned in connection with this fallacy is the dissenting opinion's failure to distinguish between common-law certiorari and statutory or constitutional certiorari which modifies common-law certiorari. The constitutions of some states do not mention certiorari—wherefore statutory change controls. See Fallacy No. 3, supra, and Fallacy No. 6, infra, for supporting authority.

One of the primary conditions for issuance of a writ of certiorari is that it will not lie when another remedy is available. *State ex rel. Pearson v. Hansen*, supra; *Call v. Town of Afton*, supra; *City of Sheridan v. Cadle*, 24 Wyo. 293, 157 P. 892 (1916). This factor alone reflects the distinction between "appeal" and "certiorari."

The people of the state have no right to appeal a criminal case. A statutory bill of exceptions does not provide a remedy for the people of the state. The fact that the statutory bill of exceptions is not an appeal of a case is discussed in Fallacy No. 5, infra.

### FALLACY NO. 5: BILL OF EXCEPTIONS vs. APPEAL

The dissent equates the procedure set forth in §§ 7–12–101 through 7–12–105, supra, with an appeal. Inasmuch as such procedure provides that the judgment "shall not be reversed nor in any manner affected," (§ 7–12–105), it does not comport with that to be accomplished by an "ap-

peal." Rule 1.04, W.R.A.P., supra, provides that this court, on review, can reverse in whole or in part, vacate, or modify any judgment or final order. The bill of exceptions procedure is inconsistent with this purpose of an appeal, and, thus, it is also something other than an appeal.

The statutory bill of exceptions, by its terms, is not an appeal *of the case.* At most, it is an appeal of an issue presented and decided in the case. The resulting opinion has no effect on the case itself. It is not an appeal.

## FALLACY NO. 6: IRRELEVANT CITATIONS

Cases and authorities cited and quoted from in the dissenting opinion are not in point and do not support the position taken in such opinion.

In *Mau v. Stoner,* supra, heavily relied upon by Justice Rose in his dissent, the court entered a decree in a water right case under a statute providing that "the decision of the court, judge or commissioner shall be final." 83 P. at 219. Not only is this a civil case, wherein the availability of certiorari is historically different than in criminal cases (discussed infra), but the court, after quoting from cases pro and con on the issues as was then commonly done, concluded at page 220 of 83 P.:

> "It is not necessary * * * for us to express an opinion as to whether there is a constitutional right of appeal or review in cases which proceed according to the course of the common law. The statute under consideration provides for a special or summary proceeding unknown to the common law, created by the Legislature for the purpose of affording temporary relief only, and to meet immediate emergencies that may arise under it. * * * *"

Not only is the case a civil one, but it concerns a specific statute providing for temporary relief and directing that the decision be final with regards to the temporary relief. It involves an appeal, not certiorari.

*State v. Heberling,* Wyo., 553 P.2d 1043 (1976); *State v. Ginther,* 53 Wyo. 17, 77 P.2d 803 (1938); *State v. Weathers,* 13 Okl.Cr. 92, 162 P. 239 (1917); *State v. Arnold,* 144 Ind. 651, 42 N.E. 1095 (1896); and *In re Boulter,* 5 Wyo. 263, 39 P. 875 (1895), all relied upon in the dissenting opinion, are cases in which the defendant was put in jeopardy and trial was had. The language from those cases directing review to be by a bill of exceptions under such condition rather than by an appeal after jeopardy attached cannot properly be quoted to pertain to certiorari. In *State v. Heberling* and in the Indiana case, the proceedings *were* pursuant to a bill of exceptions. *In re Boulter* came to the court on a petition for habeas corpus. None of these cases concern certiorari. They concern an attempted appeal. References to these cases in the dissenting opinion are misleading.

*State v. Benales,* Wyo., 365 P.2d 811 (1961), relied upon in the dissenting opinion, was not before the supreme court on certiorari. The issue involved a dismissal of an information for failure to prosecute, i.e., to grant a speedy trial. The supreme court noted that "the state undertook an *appeal* to this court, proceeding as in a civil case under the Wyoming Rules of Civil Procedure" (emphasis added). Id. at 812.

*State ex rel. Gibson v. Cornwell,* 14 Wyo. 526, 85 P. 977 (1906), also relied upon in the dissenting opinion, came to us on a bill of exceptions *and* on a petition for a writ of error, not on certiorari. The court held that the bill of exceptions rather than the writ of error was the proper procedure.

*United States v. Rosenwasser,* 145 F.2d 1015 (9th Cir.1944), concerned an action to suppress evidence by a stranger to criminal action. The quotation from this case in the dissenting opinion has to do with "appeals," not certiorari; and the court's discussion had to do with the propriety of an appeal under 28 U.S.C.A. § 227, and not with certiorari under a constitutionally granted power. Moreover, in a footnote, the court said at page 1018:

> "[3] Appellee has suggested that appeals by the government in criminal cases are

strictly confined to a few instances listed in § 682 of 18 U.S.C.A. and therefore that even if the district court's order herein be considered a final decision, the within appeal would not lie. We have considered the point but indicate no opinion thereon."

The court, thus, did not rule out even an "appeal" under proper circumstances.

The dissenting opinion quotes from a summary of a holding in *State v. B'Gos,* 175 Ga. 627, 165 S.E. 566 (1932), as such summary is contained in Annotation: Right of state to writ of certiorari in criminal cases, 109 A.L.R. 793. The dissenting opinion does not mention the other numerous case citations in the annotation which resulted in the annotation conclusion at page 793:

"That a remedy by writ of certiorari lies under proper circumstances on behalf of the state in a criminal case finds support in various decisions."

The dissenting opinion refers to 24 C.J.S. Criminal Law § 1659 and to 4 Am.Jur.2d Appeal and Error § 268 to support the proposition that there is "no right to a writ of error, to an appeal, or to an exception in a criminal case unless it is expressly conferred by * * * statute * * *." Of course, the references do not concern certiorari.

Finally, the dissenting opinion says:

" * * * The rule is reported in Annot., 91 A.L.R.2d 1095, 1096, 'Right of prosecution to writ of certiorari in criminal case,' where it is said:

" 'As a general rule the prosecution cannot appeal or bring error proceedings from a judgment in favor of the defendant in a criminal case, *in the absence of a statute clearly conferring that right.*' (Emphasis added.)"

The dissenting opinion fails to continue the quotation in context. The annotation reads further at page 1096:

"It is against this background of the prosecution's limited right of appeal in criminal cases that courts deal with the problem of the state's status to obtain by certiorari review of a lower court decision, favorable to the defendant, in a criminal proceeding; and the problem comes into sharper focus when the defendant contends, in effect, that the prosecution is attempting to accomplish by the writ what it could not do by appeal, and that his constitutional rights are being thus encroached upon."

In summarizing cases listed "§ 3. Under modern constitutions and statutes," the annotation explains:

"Among the cases discussed in this section are many instances in which the prosecution's standing to maintain the writ was upheld and many in which it was denied. The results reached depend on the particular statutory or constitutional language before the court, and the specific facts of the individual cases. * * *" (Footnote omitted.)

As reflected under Fallacy No. 3, supra, the Wyoming Constitution empowers the supreme court to issue certiorari as part of its original jurisdiction.

A few of the more recent cases holding the state to be entitled to a writ of certiorari in criminal cases are: *State v. McCormick,* Tenn.Cr.App., 584 S.W.2d 821 (1979) (cited in the majority opinion), under common law to review order suppressing evidence; *State v. Ward,* 46 N.C.App. 200, 264 S.E.2d 737 (1980), state held to be required to petition for prerogative writ of certiorari to secure review of dismissal for failure to supply speedy trial since it had no right to appeal; *People v. Gonter,* 125 Cal.App.3d 333, 178 Cal.Rptr. 66 (1981), review of jurisdiction to impose deferred incarceration program on defendant; *People v. Dee,* Colo., 638 P.2d 749 (1981), review of holding that defendant's rights were violated in administration of breath test in driving under the influence of intoxicants case. Directly in point with this case, the court held in *State v. Cullison,* Iowa, 215 N.W.2d 309 (1974), that its review in this original certiorari action of a ruling by the trial court sustaining a motion to suppress evidence was proper.

Some mention should be made of the criticism by the dissenting opinion of the

decision in *City of Laramie v. Mengel,* Wyo., 671 P.2d 340 (1983). Such criticism is founded on the same fallacies herein set out—failure to understand that the people of the state are entitled to justice just as is the defendant; that there is constitutional authority for the writ of certiorari; that certiorari is a concept entirely separate from "appeal"; that the statutory bill of exceptions is not an appeal of the case; and that certiorari is a well recognized and proper proceeding to use in the situation presented in *City of Laramie v. Mengel,* just as it is in this case.

### FALLACY NO. 7: NUMBER OF PETITIONS FOR WRITS OF CERTIORARI

The dissent recites that "we find the State's petitions for writs of certiorari from pretrial and final orders in criminal prosecutions to be raining down about our heads in torrents." We have had but a handful of such petitions. And, of course, if most of them had not come to us on certiorari, they would finally come along on appeals or on bills of exceptions.

### CONCLUSION

The majority opinion properly serves the cause of justice and is founded on sound legal reasoning and precedent.

CARDINE, Justice, concurring in part and dissenting in part.

I was not a member of the court when this writ of certiorari was issued in the first instance. Had I been, I would have opposed it being granted. We are asked here to overturn a preliminary ruling by a trial court on an evidentiary question. That is an exercise in futility. It is a waste of this court's time and limited resources.

Should we reverse the court's ruling and this case go to trial, I do not know what would prevent the court, after hearing additional testimony and receiving evidence, from, in the exercise of its discretion, excluding this evidence because its probative value is substantially outweighed by the

danger of unfair prejudice, or excluding this evidence for any of a myriad of other reasons.

The complaint in this case was filed December 22, 1982. There followed a preliminary hearing, motions, Order for Pretrial Conference, and Order Suppressing Evidence. The case was set for trial June 13, 1983. The granting of writ of certiorari and appeal from the Order Suppressing Evidence prevented the trial. The result is delay, inefficiency in disposition of the case and further crowding of the court's docket. In the future, trial courts, for the sake of efficiency, may simply take these motions under advisement and rule upon them after the commencement of trial. For these reasons, I believe we should avoid, whenever possible, involvement in evidentiary rulings and preliminary matters at the trial level.

With respect to Justice Thomas' opinion in this case, I agree with his analysis of the law and the result. However, were I considering this writ in the first instance, I would not have favored it being granted.

ROSE, Justice, dissenting.

Had I been given the opportunity, I would have voted to deny the petition for an order granting certiorari. Since I was away from the court on the day the issue was considered by the other justices and therefore not given the opportunity to express my thoughts, I take this occasion to say that it is my judgment that the writ was improvidently granted.

### *The Writ-of-Certiorari Crisis*
#### Introduction

" * ⸱ * Not being weary in search of substantial justice, he sues out a writ of error, and brings his case to this court, *where substantial justice is known to be administered in all its purity.*"[1] (Emphasis added.) *Garbanati v. Beckwith,* 2 Wyo. 213 (1880).

First addressing Chief Justice Rooney's concurring opinion, in which he criticizes my dissenting position in this matter as he

---

**1.** Ah .... for the good, old days!

undertakes to show that a bill of exceptions is *not* the exclusive means by which the State may seek to review in this court an adverse ruling made during the trial and that certiorari is appropriate for this purpose, I am blessed by not having to do a great deal of responsive research since he and Chief Justice Raper (now retired) have done it for me in *State v. Selig*, Wyo., 635 P.2d 786 (1981) and *State v. Heberling*, Wyo., 553 P.2d 1043 (1976). In *State v. Selig*, supra, 635 P.2d at 788, where the State sought review of an adverse ruling made during a criminal trial, Chief Justice Rooney, writing for the court, holds as follows:

> "A bill of exceptions is the exclusive means for the prosecution to seek review of an adverse ruling made during the trial. *State v. Heberling*, Wyo., 553 P.2d 1043 (1976); *State v. Benales*, Wyo., 365 P.2d 811 (1961); *State v. Ginther*, 53 Wyo. 17, 77 P.2d 803 (1938); *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977 (1906). It is now a statutory proceeding, and the statutory requirements must be met. *State v. Ginther*, supra, and *State ex rel. Gibson v. Cornwell*, supra."

In *State v. Heberling*, supra, 553 P.2d at 1043, Chief Justice Raper (now retired), writing for the court, said:

> "A bill of exceptions is the only way by which the State may challenge and have reviewed any adverse ruling of the district court in criminal prosecutions. *State v. Benales*, Wyo.1961, 365 P.2d 811; *State v. Ginther*, 1938, 53 Wyo. 17, 77 P.2d 803. Even then, as provided in § 7–291, W.S.1957:
>
>> " 'The judgment of the court in the case in which the bill was taken shall not be reversed nor in any manner affected, but the decision of the supreme court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may afterwards arise in the state.' "

As the author of the majority opinion in the case at bar writes, the threshold question here is this court's authority to review a district court's order suppressing evidence in a pretrial criminal proceeding. The majority find, by authority of *City of Laramie v. Mengel*, Wyo., 671 P.2d 340 (1983), that certiorari could and should be used for this purpose. In my judgment, it is in *utter* disregard of the law for this court to hold that *City of Laramie v. Mengel* furnishes authority for us to grant certiorari in the case at bar or that we are possessed of any jurisdiction whatever which would permit our utilization of certiorari for these purposes. Before I explain my objection to the majority opinion in this and other relevant respects, I pause to notice the prophetic observations of former Chief Justice Raper (now retired), as he authored his concurrence in *State v. Faltynowicz*, Wyo., 660 P.2d 368 (1983). Faltynowicz was properly here on a bill of exceptions taken by the State from a County Court ruling dismissing a criminal complaint. We sustained the bill of exceptions, but Chief Justice Raper saw the case as a

> " * * * catalyst to point up some misleading and poor Wyoming jurisprudence." 660 P.2d at 372.

He said:

> "It is my concern that in this case an *appeal* through the district court, rather than through the bill of exceptions procedure, by the State of Wyoming would have been the proper means of bringing the issue to the supreme court." (Emphasis added.) 660 P.2d at 372.

Justice Raper thought it bad law—the historic rule of this court which holds that a bill of exceptions is the only way by which the State can bring an adverse ruling in a criminal case to this court's attention for decision.[2] He then concluded that his concern extended to

> " * * * instances where a trial judge may have, in a pretrial proceeding, sup-

---

**2.** *State v. Heberling*, supra; *State v. Benales*, Wyo., 365 P.2d 811 (1961); *State v. Ginther*, 53

Wyo. 17, 77 P.2d 803 (1938); *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977 (1906).

pressed evidence necessary to the State in proceeding with the prosecution * *."

I disagree with Chief Justice Raper's belief that the State of Wyoming has, under its Constitution, statutes, case law or court rules, an interlocutory-appeal right from a trial court's adverse decision in a criminal case—a right which would even authorize the appeal of a pretrial evidentiary ruling—but I must say that his concurring opinion certainly started something. Since *Faltynowicz*, we find the State's petitions for writs of certiorari from pretrial and final orders in criminal prosecutions to be raining down about our heads in torrents. In entertaining these petitions—where the State is the petitioner in a criminal proceeding as exemplified in the case at bar—we are, *without jurisdiction*,[3] inviting a myriad of appellate and trial-court problems.

The majority opinion in this appeal represents the first time in the history of Wyoming jurisprudence that this court has granted the State of Wyoming appellate review of an adverse ruling in the criminal-trial process.

It is fundamental to the consideration of the issues and their ramifications that the granting of certiorari has raised in this appeal, that the applicable Wyoming constitutional provisions be identified and considered.

The Constitution of the State of Wyoming, Art. 5, § 3, provides—with respect to writs of certiorari—as follows:

"The supreme court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus. The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, *certiorari*, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction." (Emphasis added.)

There are no "rules and regulations" pertaining to certiorari under Art. 5, § 2, which section provides:

"Supreme court generally; appellate jurisdiction.

"The supreme court shall have general appellate jurisdiction, co-extensive with the state, in both civil and criminal causes, and shall have a general superintending control over all inferior courts, *under such rules and regulations as may be prescribed by law*" (emphasis added),

nor have regulations been adopted under Art. 5, § 18, which provides:

"Appeals from district courts to supreme court.

"Writs of error and appeals may be allowed from the decisions of the district courts to the supreme court *under such regulations as may be prescribed by law*." (Emphasis added.)

This leaves the applicable constitutional provisions in a position in this state whereby the supreme court has the "power" to issue writs of certiorari "in the exercise of its appellate * * * jurisdiction" but the "power" is present in circumstances in which there is no constitutional requirement for the issuance of such writs and no implementing "rules" and/or "regulations" have been adopted.

The Wyoming Supreme Court has historically—and with good reason—refused to even consider the merits of the State's appeals in a criminal case on the oft-repeated ground that, there being no common-law right of appeal (*State v. Benales*, Wyo., 365 P.2d 811 (1961); *State v. Ginther*, 53 Wyo. 17, 77 P.2d 803 (1938); *Mau v. Stoner*, 14 Wyo. 183, 83 P. 218 (1905)), and since the statutory bill-of-exceptions procedure (§§ 7–12–101 through 7–12–105, W.S.1977) is an exception to the common law, the bill of exceptions provides the only source of this court's jurisdiction to review the State of Wyoming's adverse criminal trial-court rulings (*State v. Heberling*, supra; *State v. Benales*, supra; *State v. Ginther*, supra; *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977 (1906)).

As early as 1905, this court said in *Mau v. Stoner*, supra, 83 P. at 219, that, unless

---

**3.** *State ex rel. Gibson v. Cornwell*, supra n. 2,  discussed infra.

the Constitution guarantees an appeal as a matter "of right," [4] it is the legislature that has the implementing authority as contemplated by Art. 5, §§ 2 and 18 of the Wyoming Constitution. We said:

" * * * It is well settled that, in the absence of a direct constitutional requirement, the right of appeal does not exist unless expressly conferred by statute. The right to have a judgment of an inferior tribunal reviewed by writ of error or appeal is not a natural or inherent right. It pertains merely to the mode of judicial procedure or the remedy. Unless it is guaranteed as a matter of right in the Constitution, the Legislature has power to pass laws not only regulating the mode of proceeding, but limiting the cases in which the right may be exercised. The remedy by appeal was unknown to the English common law, hence it may be said that in both England and the United States the whole matter of appellate review is regulated almost entirely by statute law."

It was the court's task in *Mau v. Stoner* to decide whether a right of appeal to the Wyoming Supreme Court was denied by a statute which provided that a trial court's decision would be "final." It was contended, without success, that the Constitution of the state guaranteed appellant access to this court. We said:

"Since the Legislature has declared that the judgment of the district court shall be final * * *, it becomes important to determine whether, under the Constitution of this state, the right of appeal is guaranteed in all cases." 83 P. at 218.

The author of the Mau opinion wrote that Art. 5, § 2 of our Constitution, supra, defines the appellate jurisdiction of this court

" * * * without attempting to define the manner of appeal or the class of cases in which appeals may be taken," 83 P. at 219,

and the court then held that the supreme court's jurisdiction is limited by the following Art. 5, § 2 language:

" * * * under such rules and regulations as may be prescribed by law."

The court said:

" * * * We think the expression 'under such rules and regulations as may be prescribed by law' refers to and limits all the powers conferred by the section, in other words, prescribes how the exercise of these powers may be regulated and limited." 83 P. at 219.

It was one of the court's conclusions in *Mau* that it was the intention of the framers of our Constitution that the subject of appeals to this court would be left to the legislature, the court saying:

" ' * * * It is quite clear from the provisions of Sections 18 and 20 that the framers of the fundamental law intended to leave the power over the subject of appeals to the Legislature, to be exercised in such manner as public policy and the best interests of the people might require.' " Quoting from *McClain v. Williams*, 10 S.D. 332, 73 N.W. 72, 43 L.R.A. 287 (1897).

In emphasizing that the right of appeal even though authorized must nevertheless be "prescribed by law" (i.e., by the legislature), the *Mau* court referred to this court's earlier decision in *In re Boulter*, 5 Wyo. 263, 39 P. 875 (1895), where we said:

" * * * [W]e have no direct constitutional provision allowing appeals as a matter of right in criminal cases, except that this court is clothed with appellate jurisdiction in criminal as well as in civil causes, and is vested with a general superintendence and control over all inferior courts, under such rules and regulations as are prescribed by law (Const. Wyo., art. 5, § 2) * * *." 39 P. at 878.

It was the court's conclusion in *Mau* that, since there had been no rules or regulations promulgated under Art. 5, §§ 2 and 18, the respondent had no right of appeal.

---

4. *City of Laramie v. Mengel,* supra, 671 P.2d at 345, holds that the grant or denial of certiorari is discretionary with this court.

The requirement that there be express statutory authority where the State seeks adverse ruling review through the utilization of certiorari was discussed in Annot., 109 A.L.R. 793, 794–795, "Right of state to writ of certiorari in criminal case":

"But against the State's contention that authority to entertain a petition by the State for certiorari in a criminal case, in which a conviction had been reversed by the Court of Appeals (an intermediate court), was conferred by a constitutional amendment providing that it should be competent for the Supreme Court 'to require by certiorari or otherwise any case to be certified ... for review and determination with the same power and authority as if the case had been carried by writ of error,' the Supreme Court held that it did not have such authority in *State v. B'Gos* (1932) 175 Ga. 627, 165 S.E. 566, and relied, in part, upon the general statement in 8 R.C.L. p. 168, that 'the state has no right to sue out a writ of error on a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered on a verdict of acquittal or on the determination by the court on a question of law,' in connection with decisions to the effect that the State was not entitled to appeal criminal cases; and observed that the amendment relied upon had reference only to the nature of the cases to be reviewed, and not to the right of any particular party or litigant to appeal."

### Bill of Exceptions or Writ of Certiorari What Is the Difference?

The difference between our granting certiorari for the purpose of deciding a question in a criminal case, on the one hand, and agreeing to decide an issue framed by a bill of exceptions, on the other hand, is far-reaching and fundamental. Even though the substantive issues are addressed in both procedures, in the first instance, the particular defendant whose criminal prosecution gives rise to the controverted opinion or decision of the district court is affected and bound by our decision, while in the second this is not so. In the latter case, this court's opinion is binding upon the courts of Wyoming in future "similar" cases but will not affect the judgment of the court "in the case in which the bill was taken." [5] I therefore concede here that the bill-of-exceptions proceeding which is authorized by Wyoming statutes, will not provide the relief that the State seeks as it petitions in certiorari since the defendant Heiner in whose pretrial proceeding the suppression issue is raised will not be affected. Even though this is so, the overriding response to this objection is that the State has no inherent or common-law right to appeal adverse trial-court rulings in a criminal prosecution (*State v. Benales*, supra, and *State v. Ginther*, supra), and it only has authority to exercise its constitutional appellate prerogatives "under such rules and regulations as are prescribed by law," *Mau v. Stoner*, supra. There being no rules or regulations for the exercise of interlocutory appellate authority through certiorari, and it being noted that the legislature has in fact furnished a review process through the bill-of-exceptions statutes, the right of appeal claimed in these proceedings cannot, therefore, be found to exist.

The bill-of-exceptions procedure is the *only* method by which this court may take jurisdiction for the purpose of deciding questions raised by trial-court rulings in a criminal prosecution which are alleged by the State to be adverse to its interests. *State v. Ginther*, supra; *State ex rel. Gibson v. Cornwell*, supra. Since the bill of exceptions is itself an exception to and in derogation of the common law, it must be strictly construed and applied.[6]

---

5. Section 7–12–105, W.S.1977, provides:
   "The judgment of the court in the case in which the bill was taken shall not be reversed nor in any manner affected, but the decision of the supreme court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may afterwards arise in the state."

6. See *State v. Stovall*, Wyo., 648 P.2d 543, 547–548 (1982), for a reiteration of the general rules.

### The Common Law and the Statutory Exception

The argument is made, however, that the bill-of-exceptions statute furnishes the State with no right of appellate review as respects the particular defendant in whose prosecution the controversial issue arises in the trial court and, since certiorari is authorized by the Constitution (Art. 5, § 3), and since one of the offices of certiorari is to furnish litigants appellate relief where no other avenue of appeal is available (*City of Laramie v. Mengel*, supra), it must be that certiorari was intended to serve as a vehicle for the State to appeal adverse criminal trial-court rulings which, if the appeal is successful, will be binding upon the defendant in whose prosecution the question is raised. The silent predicate to which this contention is anchored is that the State possesses a right to have its adverse rulings in criminal prosecutions reviewed as on appeal. This is just not so. *State v. Benales*, supra; *State v. Ginther*, supra.

### The Common-Law Rule

This court has noted long ago that the common-law rule is that the State has *no right to appeal* adverse criminal rulings unless the right is expressly given.

24 C.J.S. Criminal Law § 1659 submits the common-law rule to be:

"Under the common law as generally understood and administered in the United States, the state or federal government *has no right to a writ of error, to an appeal, or to exceptions in a criminal case unless it is expressly conferred by * * * statute * * *"* (emphasis added),

citing Wyoming's *State v. Benales* and *State v. Ginther* for the proposition that Wyoming is one of the states that holds to this rule of the common law. The rule is reported in Annot., 91 A.L.R.2d 1095, 1096, "Right of prosecution to writ of certiorari in criminal case," where it is said:

"As a general rule the prosecution cannot appeal or bring error proceedings from a judgment in favor of the defendant in a criminal case *in the absence of a statute clearly conferring that right."* (Emphasis added.)

To the same effect see 4 Am.Jur.2d, Appeal and Error § 268, pp. 762–763.

In any case, without specific statutory permission, neither the State nor the defendant can appeal an adverse ruling of the court in a pending criminal action since it will be held to be interlocutory in nature and thus not appealable. In *United States v. Rosenwasser*, 145 F.2d 1015, 1017 (9th Cir.1944), the court said:

"* * * However, if a party to a pending criminal action seeks the suppression of evidence together with the return of the seized papers and if the principal purpose of the motion is to suppress evidence at the criminal trial, the proceeding is incidental to the criminal action, and the resulting order is held to be interlocutory and not appealable. *Cogen v. United States*, 1929, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275; *Jacobs v. United States*, 1926, 9 Cir., 8 F.2d 981; *United States v. Marquette*, 1921, 9 Cir., 270 F. 214. Compare *Cobbledick v. United States*, 1940, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; *Alexander v. United States*, 1906, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686."

In commenting upon the common law pertaining to interlocutory orders in a criminal prosecution, the court said in the *Rosenwasser* case:

"* * * [A]ppeals from interlocutory orders are exceptional in character and are wholly dependent upon statute * * *." 145 F.2d at 1018.

### Bill of Exceptions Is an Exception to the Common-Law Rule

In *State v. Ginther*, supra, the defendant was charged with the theft of a cow—with receiving the animal knowing it to have been stolen—but no value of the property was alleged. Trial was had and the defendant found guilty, whereupon a motion in arrest of judgment was made and sustained. The State appealed and we held that this court had no jurisdiction since there was no statutory provision for the appeal. In dismissing the appeal, we said:

"It seems generally held under the common law as administered in this country that the State may not bring a writ of error or take an appeal *or have exceptions in a criminal case, unless the right thereto has been expressly granted by statute* * * * *"* (emphasis added), 77 P.2d at 803,

and while noting that the courts of some states permit such review in limited circumstances—either by case rule or statute—we held that we would adhere to the common law in Wyoming.

We noted in *Ginther* that Wyoming has a statutory exception to this common-law rule which appears as our bill-of-exceptions statutes according to which the State's attorney may take "any opinion or decision of the court" to this court for review. We then went on to hold and cite with approval cases which hold that, where an appellate right is granted and is based upon specific statutes, such statutes are to be strictly construed and not to be enlarged by construction. It is said in 24 C.J.S. Criminal Law, § 1659, supra, wherein the states' right of appeal in criminal cases is discussed, that the common-law rule is as this court identified it in *Ginther*, supra. The encyclopedia then goes on to say that

" * * * it is generally held that, being in derogation of the common law, they [statutes granting appellate rights] should be strictly construed, and that the authority conferred thereby should not be enlarged by construction. [Citations.]" [7]

In *State v. Weathers*, 13 Okl.Cr. 92, 162 P. 239 (1917), cited in *Ginther* for the proposition that appellate criminal appeals statutes which are in derogation of the common law must be strictly construed, the Oklahoma statute expressly allowed the State to appeal in a criminal case from an order arresting judgment, quashing an information or indictment, and questions reserved by the State. It was held that the

prosecution had no right to appeal from a trial-court order granting a person convicted of a crime a new trial. The court said:

" * * * In many jurisdictions the state has no right of appeal at all, and its right to appeal, where the right is granted, is based upon specific statutes, which statutes are not to be enlarged by construction." 162 P. at 240.

See also *State v. Arnold*, 144 Ind. 651, 42 N.E. 1095 (1895), cited in *Ginther*, where, in referring to a statute similar to that considered in *State v. Weathers*, supra, it was said:

"These statutes, it is urged, deny the right of the State to appeal in other instances than those enumerated, and this we have no doubt is correct, as shown by the cases cited to that proposition. *State v. Bartlett*, 9 Ind. 569; *State v. Hamilton*, 62 Ind. 409; *State v. Hallowell*, 91 Ind. 376; *State v. Evansville, etc., R.R. Co.*, 107 Ind. 581 [8 N.E. 619]."

This court then held in *State v. Ginther*:

"*Our view of the law accordingly is that the prosecution in a criminal case in this state is given by statute no method of review of adverse rulings except through the medium indicated in the four above cited sections [the bill-of-exception proceeding], with the limitations there imposed.*" (Emphasis added.) 77 P.2d at 807.

In *State v. Benales*, supra, the court granted the defendant's motion for dismissal based upon the constitutional guarantee of a speedy trial under the Wyoming Constitution, Art. 1, § 10, and § 7-11-208, W.S.1977. The State undertook an appeal to this court, proceeding as in a civil case under the Wyoming Rules of Civil Procedure, and, in a per-curiam opinion, we dismissed the appeal as we observed that the State had not complied with the bill-of-exceptions statute, anchoring our holding

---

7. We recently expressed the derogation-of-common-law rule for Wyoming when we said in *State v. Stovall*, supra n. 6, 648 P.2d at 547–548:
" * * * A statute designed to change the common law must be strictly construed. *Maha-*

*ney v. Hunter Enterprises, Inc.*, Wyo., 426 P.2d 442 (1967). It must speak in clear and unequivocal terms, for the presumption is that no change is intended unless the statute is explicit."

upon the *State v. Ginther* rule quoted above.

In *State v. Heberling,* supra, 553 P.2d at 1043, on September 3, 1976, we revisited and reaffirmed these prior holdings and thus this court has historically been committed to the common-law rule which holds that, unless there is a statutory exception, the State may not appeal an adverse ruling of the district court in a criminal case. Where there is a statutory exception to this rule, the statutes which provide the exceptions, as with our bill-of-exception statutes, §§ 7–12–101 through 7–12–105, supra, being in derogation of the common law, must be strictly adhered to. *State v. Ginther,* supra; *State ex rel. Gibson v. Cornwall,* supra.

### Bill of Exceptions
### The Exclusive Source of This Court's Jurisdiction

Since it is not possessed of a common-law right of appeal, the State has no right to appeal a district court's adverse ruling or judgment in a criminal prosecution without strictly adhering to the bill of exceptions provisions of the statute (§§ 7–12–101 through 7–12–105, supra). This being so, this court, except by bills of exceptions, has no jurisdiction to review any such rulings or judgments. *State ex rel. Gibson v. Cornwell,* supra. In *Gibson,* Chief Justice Potter, writing for the court, said:

> " * * * It is only upon a compliance with the provisions of the statute in question [bill of exceptions] that this court obtains jurisdiction to review any ruling of the district court adverse to the state in criminal prosecutions." (Emphasis added.) 85 P. at 979.

In *Gibson,* the Attorney General argued that an exception to the ruling of the court should be sufficient to preserve the issue for this court's consideration. This court rejected the contention, saying:

> " * * * But it is obvious, we think, that the bill in a case like this not only serves to preserve in the record matters which otherwise would not be in the record, *but it is the basis of the jurisdiction of this*

> *court. It is not perceived that we would have authority to decide any question arising upon exceptions of the prosecuting attorney in a criminal case, without a bill of exceptions containing the same, taken and filed as prescribed by the statute."* (Emphasis added.) 85 P. at 979.

Having said this, the court struck the bill since it was not sealed as provided by what is now our § 7–12–102, W.S.1977, 1983 Cum.Supp.

### Reference to the Majority Opinion and City of Laramie v. Mengel, Supra, and Certiorari

Without even giving the bill-of-exceptions statutes (§§ 7–12–101 through 7–12–105) or the case law which holds that this court has no jurisdiction to "review any ruling of the district court adverse to the state in criminal prosecutions" except by way of bill of exceptions (*State ex rel. Gibson v. Cornwell,* supra) a sideways glance—that is to say, *without even mentioning these statutory and historical case authorities* which identify and define the very jurisdiction of this court to act in the premises, the majority in the case at bar say:

> "The State of Wyoming sought review of these pretrial rulings pursuant to a petition for writ of certiorari. It is our conclusion that this court does have the authority and responsibility to review such pretrial rulings by trial judges in the exercise of its discretion." 683 P.2d at 630.

I cannot fathom the "discretion" to which the majority have reference. We do not even have jurisdiction to hear this appeal. I repeat, for emphasis, the words of Chief Justice Potter as he wrote for this court in *State ex rel. Gibson v. Cornwell,* supra:

> " * * * It is only upon a compliance with the provisions of the statute in question [bill of exceptions] that this court obtains jurisdiction to review any ruling of the district court adverse

*to the state in criminal prosecutions,"* (emphasis added), 85 P. at 979,

and where the Chief Justice also said: " * * * But it is obvious, we think, that the bill in a case like this * * * *is the basis of the jurisdiction of this court. It It is not perceived that we would have authority to decide any question arising upon exceptions of the prosecuting attorney in a criminal case, without a bill of exceptions containing the same, taken and filed as prescribed by the statute.*" (Emphasis added.) 85 P. at 979.

I agree that we need not be slavishly bound by old opinions, but if we are to overrule them we should say so and at the same time be possessed of adequate and substantial authority upon which to base our overruling decision. In this case, however, the majority do not have or even mention case authority which would authorize the overruling of *State ex rel. Gibson v. Cornwell.* In fact, *State ex rel. Gibson v. Cornwell* is not even noticed by the majority. The reason the majority cite no authority for their position here has to be because there are no legislative rules and regulations which permit this court to implement our powers of certiorari for interlocutory appellate purposes in a criminal case.[8] This is because the State does not possess a common-law right to an appeal, and, where there is an exception to the common-law rule as Wyoming has in its bill-of-exceptions statutes, the exception, being in derogation of the common law, must be strictly followed and may not be enlarged by construction. *State v. Ginther,* supra.

The most shocking feature of this court's majority opinion in the case at bar is its reliance upon our recent decision in *City of Laramie v. Mengel,* supra, as authority for holding that the trial court's evidentiary ruling may be brought to our attention through a petition for a writ of certiorari.

The majority say, in this respect:

"The threshold question of the authority of this court to review these evidentiary rulings by the trial court pursuant to a writ of certiorari is settled in principle by the decision of this court in *City of Laramie v. Mengel,* Wyo., 671 P.2d 340 (1983)." 683 P.2d at 632.

The thing that makes the majority's reliance upon *City of Laramie v. Mengel* so unbelievable is the fact that the City of Laramie case did not evolve from a petition by the State as is the case here, and the petitioner City was not—for this reason at least—jurisdictionally limited by the bill-of-exceptions provisions of our statutes from seeking certiorari.

In *City of Laramie v. Mengel,* supra, the substantive issue was the constitutionality of § 31-6-105(f), W.S.1977, as adopted by the Laramie Municipal Code, which statute and code provision hold that evidence of a driver's refusal to submit to a blood-alcohol test could be used against him in court where the citizen stands accused of operating a motor vehicle upon the highways of the state while under the influence of intoxicating liquor.

The municipal judges in *City of Laramie v. Mengel* had held, in response to motions to suppress and in limine, that the refusal to submit to the blood-alcohol test was testimonial in nature, and that the ordinance was therefore violative of the protection against self-incrimination found in the United States and State constitutions. The order granting the motions of respondents Mengel and Johnson further prohibited the City of Laramie from permitting any of its witnesses to comment upon the refusal of either respondent to take a blood-alcohol chemical test, or to comment directly or indirectly in any manner concerning such refusal.

In an effort to obtain a definitive decision on the issue, *the City of Laramie* (not the State) filed a document in this court entitled "Petition for Permission to File Bill of Exceptions." Instead of granting or denying this petition, we granted a writ of certiorari, noting that

8. As mandated by *Mau v. Stoner's* interpretation of Art. 5, § 18, of the Wyoming Constitution.

" * * * § 7–12–102 through § 7–12–105, W.S.1977, pertaining to bills of exceptions were not applicable in an instance in which the accused is not charged with an offense against the laws of the State of Wyoming and this statutory proceeding [bill of exceptions] was not available with respect to a prosecution in a municipal court for violation of an ordinance. *City of Sheridan v. Cadle*, 24 Wyo. 293, 157 P. 892 (1916)." 671 P.2d at 343.

In its further defense, the ruling in *City of Laramie v. Mengel* had prospective effect only and it was in this respect consistent with the theory of bills of exceptions. Most importantly, that appeal was not proscribed by the rule that says where an appellate proceeding is legislatively in place it must be followed, *State v. Ginther*, supra. We therefore treated the City of Laramie's petition for a bill of exceptions as though it were a petition for a writ of certiorari for the purpose of settling questions of constitutional magnitude for which review was otherwise unavailable. This is, of course, in the proper circumstances, one of the offices of certiorari. *City of Laramie v. Mengel*, supra.

In *City of Laramie v. Mengel* we assumed, in reliance upon language contained in *City of Sheridan v. Cadle*, 24 Wyo. 293, 157 P. 892 (1916), that this court possessed jurisdiction to review the questions raised by the City of Laramie. We said in *City of Sheridan v. Cadle:*

"This not being a civil case, there seems to be no provision giving the city a right of appeal to this court. We think, therefore, that the writ might be issued to determine the question of the jurisdiction of the district court to entertain the appeal in which the order complained of was made." 157 P. at 895–896

Parenthetically, I am now forced to the admission that, having studied this subject in greater depth, and especially since revisiting this court's earlier opinion in *Mau v. Stoner*, supra—which holds unequivocally that, even where constitutional appellate authority exists, the exercise of rights of appeal must nevertheless be authorized by the legislature through the promulgation of statutory rules and regulations—and given the absence of any such implementing legislation in the area of certiorari, I now question the propriety of that language in *City of Sheridan v. Cadle*, upon which we relied in *City of Laramie v. Mengel*. According to *Mau v. Stoner* and the overwhelming weight of the general law, this court is without jurisdiction to employ its constitutional grant of appellate certiorari authority to review *any* questions—civil or criminal—unless and until the requisite legislation is promulgated.

However, I only give tangential reference by way of dicta to the *City of Laramie v. Mengel* utilization of certiorari because, regardless of whether this court was correct in granting certiorari in *City of Laramie v. Mengel*, that case provides no authority for the issuance of the writ in the case at bar. This is so because the legislature has expressly limited this court's jurisdiction to review questions raised by the State in a criminal case. The bill of exceptions is the only mode of review, and this court, therefore, has no jurisdiction to hear, under the label of "certiorari," interlocutory appeals or appeals from final orders brought by the State.

It is with the assumption of jurisdiction that I take issue with the majority opinion in the appeal at bar—not whether, assuming jurisdiction, the writ was otherwise lawfully employed, and it is in the jurisdictional context of our difference that I charge the majority with taking unwarranted liberty with our holding in *City of Laramie v. Mengel* when the majority opinion says:

"The threshold question of the authority of this court to review these evidentiary rulings by the trial court pursuant to a writ of certiorari is settled * * * in *City of Laramie v. Mengel* * * *." 683 P.2d at 632.

This is just not so. In City of Laramie we assumed we had jurisdiction to employ certiorari under *City of Sheridan v. Cadle*, supra, and, in *any* event, we were not involved with a State of Wyoming criminal

appeal and the consequential proscriptions of the bill-of-exceptions statutes. In the case at bar, we simply do not have jurisdiction—the State having no inherent right of appeal and the bill of exceptions not having been utilized, *State ex rel. Gibson v. Cornwell*, supra.

The majority in the appeal at bar call attention to the observations that this court made in *City of Laramie v. Mengel* having to do with what we said about the utilization of the writ of certiorari in *Call v. Town of Afton*, 73 Wyo. 271, 278 P.2d 270 (1954). The majority say:

> " * * * We did note in *City of Laramie v. Mengel*, supra, that review pursuant to the statutes providing for a bill of exceptions was not available to the city. In that opinion we quoted language from *Call v. Town of Afton*, 73 Wyo. 271, 278 P.2d 270 (1954), in which the court observed in substance that the writ of certiorari subserves a good purpose in instances in which an appeal (or a bill of exceptions) is not plain, speedy and adequate. With respect to rulings which suppress important evidence to be offered by the State in a criminal prosecution the inadequacy of the bill of exceptions after an acquittal is patent." 683 P.2d at 632.

By this statement the majority are saying in effect that in *City of Laramie v. Mengel* we relied on *Call v. Town of Afton* (where the State was not a petitioner for certiorari) for the proposition that certiorari serves a good purpose in instances in which "an appeal (or a bill of exceptions) is not plain, speedy and adequate." From this observation about a circumstance in which certiorari may be utilized, the majority reason:

> *Even though the State has no common-law right of appeal and even though the bill of exceptions is available and is the only statutory remedy the State has—and even though this court has held that the bill of exceptions is the jurisdiction-furnishing vehicle in these circumstances*—we find that a bill of exceptions would be inadequate *after ac-*

*quittal* and we will therefore simply disregard the bill-of-exceptions jurisdictional requirement as previously announced by this court and, without statutory implementing sanction, employ certiorari in its stead.

When the majority observe:

> "With respect to rulings which suppress important evidence to be offered by the State in a criminal prosecution, *the inadequacy of the bill of exceptions after an acquittal is patent*" (emphasis added), 683 P.2d at 632,

it is constructing its own fantacized "inadequacy" out of an assumption that the law provides the State with the right to appeal adverse criminal rulings *in addition to the remedy provided by the bill of exceptions*. This is just not the case. In fact, it amounts to judicial sophistry. The State has no right of appeal except that which is given by statute and, if so provided as it is in Wyoming's criminal code, the statute must be followed with particularity, *State v. Ginther*, supra. Thus, the majority make a fatally unwarranted and unauthorized assumption in order to reach its fatally faulty conclusion with respect to the utilization of the writ of certiorari in the case at hand.

## CONCLUSION

In summary, I call attention to these following propositions:

The Constitution of the State of Wyoming gives this court the power to issue writs of certiorari in the exercise of its appellate power (Art. 5, § 3), but this authority is restricted by such rules and regulations as "may be prescribed by law" (Art. 5, §§ 2 and 18). It is the legislature that has the authority to limit and define the appellate process (*Mau v. Stoner*, supra). The writ of certiorari being in aid of this court's appellate jurisdiction (Art. 5, § 3), statutory authority must exist to invoke the court's certiorari authority (109 A.L.R. at 795, supra) since the State has no common-law right of appeal from adverse trial court decisions in a criminal prosecution (*State v. Benales*, supra; *State v. Ginther*,

supra; Annot., 91 A.L.R.2d 1096, supra; 4 Am.Jur.2d Appeal and Error § 268, pp. 762–763; 24 C.J.S. Criminal Law § 1659, supra). In absence of statute, the State has no common-law right to an interlocutory appeal from an adverse ruling in a criminal prosecution (*United States v. Rosenwasser,* supra).

In Wyoming, the legislature has made an exception to the common-law rule of nonappealability of the State's adverse criminal rulings through the bill-of-exceptions statutes (*State v. Ginther,* supra). Since the bill-of-exceptions statute is in derogation of the common law, it must be strictly construed and its authority cannot be enlarged by construction.[9]

This court has held that, based upon these above propositions, the prosecution in Wyoming has "no method of review of adverse rulings except through [the bill-of-exceptions procedure]" (*State v. Ginther,* supra), and, finally, we have said that it is only upon compliance with the bill-of-exceptions provisions that this court has "jurisdiction to review any ruling of the district court adverse to the state in criminal prosecutions" (*State ex rel. Gibson v. Cornwell,* supra).

I take issue with the majority's utilization of *City of Laramie v. Mengel,* supra, as an excuse to ignore and circumvent these jurisdictional prohibitions against the issuing of a writ of certiorari in the case at bar. I say this, because in *City of Laramie v. Mengel* we granted the writ upon the authority of *City of Sheridan v. Cadle,* noting that, since the State was not the petitioner, the bill-of-exceptions statutes were not available to bring the issues here. We said that the bill-of-exceptions statutes

 " * * * were not applicable in an instance in which the accused is not charged with an offense against the laws of the State of Wyoming and that this statutory proceeding [bill of exceptions] was not available with respect to a prosecution in a municipal court for violation

of an ordinance," citing *City of Sheridan v. Cadle,* supra,

and went on—no matter how carelessly—to exercise our certiorari appellate authority. But at least it can be said that our procedure was authorized by Wyoming Supreme Court precedent and pursued the same underlying philosophy as that contained in the bill-of-exceptions statutes.

For the reasons given, I would hold that the majority commit grievous error in granting the writ of certiorari in this appeal because this court has, by this method, no jurisdiction to review a suppression ruling of the district court adverse to the State of Wyoming.

I would hold that the petition for a writ of certiorari was improvidently granted.

---

9.   *State v. Ginther,* supra; *State v. Arnold,* supra; *State v. Weathers,* supra; 24 C.J.S. Criminal Law § 1659, supra; and see *State v. Stovall,* supra n.

6, for reaffirmation of the rule pertaining to the strict construction of statutes in derogation of the common-law concept.